## TALIAFERRO et al. v. ROGERS.—248 S. W. (2) 835.

Western Section. October 10, 1951.

Petition for Certiorari denied by Supreme Court, February 9, 1952.

522

Marion S. Kaufman, of Memphis, for appellants.

J. G. Farrar and Eulyse M. Smith, both of Memphis, for appellee.

ANDERSON, P. J. With characteristic ability and industry, Chancellor Creson stated the case and disposed of the questions presented in a thoroughly considered written opinion. This in part is as follows:

"Complainants assert title to the real property described in the pleadings in this cause as the heirs-at-law of Alice Rodgers, who died intestate in Memphis, Shelby County, Tennessee on the 27th day of February 1949; insisting that they are the half sisters and brother of said Alice Rodgers through a common father, one John Stevenson, who died on August 12, 1939. The property was inherited by Alice Rodgers from her maternal grandfather and she left no descendants, parents, no brothers or sisters of the whole blood and no brothers or sisters of the half blood on the maternal side.

"Defendant Rodgers is the surviving husband of Alice Rodgers and he claims to inherit from her by virtue of the provisions of Tennessse Code Sec. 8382-3; claiming Alice Rodgers was an illegitimate child of Rosa Humphreys, the second spouse of John Stevenson. Defendant's contention takes two aspects (1) that Alice Rodgers was not in fact the daughter of John Stevenson and (2) that in any event, the ceremonial marriage of Rosa Humphreys and John Stevenson was void, since at that time there was subsisting a prior marriage of John Stevenson with one Emma Hess.

"It appears that on January 1, 1894 John Stevenson and Emma Hess were ceremonially married. Of this union one child, the complainant, Beatrice Talia-

ferro, was born, in the year 1895. Some three weeks after the birth of Beatrice, John Stevenson and Emma Hess permanently separated; and her whereabouts thereafter are left in large measure to speculation.

"On August 27, 1902 John Stevenson and Rosa Humphreys were ceremonially married and during the period of their wedlock one child, Alice Rodgers, was born, in the year 1903. Rosa Humphreys (Stevenson) divorced John Stevenson on February 17, 1904 by decree of the Circuit Court of Shelby County, Tennessee. John Stevenson thereafter on June 20, 1904 ceremonially married Mollie Walker in Memphis, Shelby County, Tennessee; and of this union were born Moses Stevenson and Viola Stevenson Anderson, complainants herein.

"It is in part complainants' theory that even should the marriage of John Stevenson and Rosa Humphreys have been void by reason of a prior subsisting marriage of John Stevenson, the said Alice Rodgers, deceased, child of that marriage is nonetheless legitimate by virtue of the provisions of Tennessee Code Sec. 8453; complainants rely upon the construction placed upon that section in Deihl v. Jones, 1935, 170 Tenn. 217, 94 S. W. (2d) 47, and Duggan v. Ogle, 1941, 25 Tenn. App. 467, 159 S. W. (2d) 834. That Code Section is as follows:

"'Legitimacy of children.—The annulment or dissolution of the marriage shall not in any wise affect the legitimacy of the children of the same.'

"It is held in those decisions that it was the intention of the Legislature, by inserting the words 'annulment or' in the above Code Section when re-enacted in the Code of 1932, to prevent the legitimacy of

the children thereof from being in any wise affected
in cases where the marriage was void ab initio; that
by the amendment the same status of legitimacy was
extended to the children of a marriage annulled as
was theretofore enjoyed by the children of a mar-
riage dissolved.

"The legitimacy here pointedly in question is that
of Alice Rodgers, child of the second ceremonial
marriage of John Stevenson, of which marriage Alice
Rodgers was born in the year 1903. It is essential
to have ever in mind that the sole basis of decision
here is the status of Alice Rodgers, as legitimate or
otherwise, in relation to John Stevenson. If by vir-
tue of the above quoted statute Alice Rodgers is to
be legally regarded as the legitimate daughter of
John Stevenson, she is also sister of the half blood
to complainants.

"It is true, as counsel urge, that in Deihl v. Jones,
supra, the opinion mentions that the father there
died after the amendment to Section 8453 was made;
and the child there was born after said amendment
and perforce was legitimate from his birth. Also
here John Stevenson died several years after the
Code Amendment, Alice Rodgers was born long prior
to the Code amendment, but died thereafter. Though
there is not complete unanimity of view, statutes
legitimating the issue of void or voidable marriages
have been given effect as to issue living at the time
of the enactment, though death of both parents oc-
curred prior to enactment of legitimating statute.
Gregley v. Jackson, 1882, 38 Ark. 487. In other cases
such as Carroll v. Carroll, 1858, 20 Tex. 731, it has
been said that statutes legitimating the issue of mar-
riages deemed null in law apply to all marriages,

whether celebrated before or after the passage of the law, provided the parent died after its passage.

"In Lincecum v. Lincecum, 1834, 3 Mo. 441, the opinion was forcefully expressed that the fact that marriage took place before the enactment of a statute having the effect of legitimating the issue thereof did not render such statute inoperative where the issue was living at the time of the invocation of the statutes, they being held retroactive in that respect.

"In Virginia in the case of Stones v. Keeling, 1804, 5 Call. (Va.) 143, as in the Tennessee decision just mentioned, much stress was laid upon the fact that the parent died after the statute became operative, in holding the children of a bigamous marriage entitled to inherit from their father. On the issue of legitimacy, apart from consideration of retrospective application of laws, it was held in Buchanan v. Harvey, 1864, 35 Mo. 276, that children by each of plural wives were legitimate.

"An able annotation on the effect of statutes legitimating issue of void or voidable marriages found in L. R. A. 1916C 764, succinctly points out that statutory provisions to the effect that the issue of all marriages deemed null in law or dissolved by divorce shall be deemed and considered legitimate, served to legitimate the issue of a marriage void because bigamous, in consequence of which such issue are endowed with all the rights of the legitimate, are entitled to the father's name and to his protection and to the same extent as if they were the issue of a valid marriage, are entitled to derive an estate from the mother and to transmit it to descendants, *are entitled to the right of inheritance by collateral relatives,*

*such as by one child through a common parent from another child by another parent.*

"No question of retrospective application of the statutes so as to divest any rights of heirs of John Stevenson arises in the instant case—and short of illegal retrospective application of a statute of the character and salutary purpose of that here involved, no justification is to be found, it is thought in either law or logic, for limiting its alleviating purpose as defendant insists. It is held that that statute is effective to render Alice Rodgers the legitimate child of John Stevenson: and that, though at the time of his ceremonial marriage to Rosa Humphreys his prior marriage to Emma Hess still subsisted."

The insistence is that a bigamous marriage is void ab initio because contrary to public policy and that such marriages are not within the purview of Code Section 8453. The theory of this submission is that if public policy is the invalidating factor, the statute does not reach the children. This is a unique contention and one which it is asserted the Chancellor did not consider or pass on.

█ There is no doubt that in this state, a bigamous marriage is void ab initio. This, because, as the Supreme Court has pointed out, the parties lack the capacity to marry. The most recent expression of the Court on this question is Pewitt v. Pewitt, 192 Tenn. 227, 240 S. W. (2d) 521. But it is proper to note that in that case the Court was dealing with the rights of the parties to the ceremony, and expressly pointed out that no rights of children of the attempted marriage were involved, and hence Code Section 8453 had no application.

Prior to the adoption of the present Code, the statute did not cover a case where the marriage was annulled, but was confined to cases where there was a dissolution of the

bonds of matrimony in the manner prescribed by the statute. The result was that the legitimacy of the children and hence their capacity to inherit depended upon whether one of the parties to the marriage successfully sought its dissolution. Thus the law remained until the enactment of the Code of 1932, which broadened the original language of the provision so as to make it cover cases of annulment as well as where there was a dissolution of a marriage. Code Sec. 8453; Deihl v. Jones, 170 Tenn. Tenn. 217, 94 S. W. (2d) 47.

But in that case the Court went further and held that the statute as amended is not limited in its application to cases where there is an annulment by decree of Court, but protects equally the children of marriages void ab initio even though no such relief is sought by the parents. This is true, said the Court, because the statute is for the benefit of children as innocent parties. Deihl v. Jones, supra.

This Court, Eastern Section, reached the same conclusion in Duggan v. Ogle, 25 Tenn. App. 467, 159 S. W. (2d) 834.

The amendment effected by the adoption of the Code, and particularly the construction given it by our courts, was a major step forward in carrying out the manifest determination of all concerned to remedy the harshness and inhumanity of the common law of bastards which visited the sins of one or both of the parents upon the head of the innocent offspring.

A number of states have similar statutes providing that the issue of null and void marriages have the status of legitimate children. See 10 C. J. S., Bastards, Section 2-C, page 10.

One of the first states to enact such a statute was Virginia. The bill was drafted and reported by a commit-

tee, of which Thomas Jefferson was one. The language of that statute is: "The issue of marriages deemed null in law, or dissolved by a court, shall nevertheless be legitimate." Code 1950, Sec. 64-7. The statute came before the Court of Appeals of Virginia at the May Term 1804, in the case of Stones v. Keeling, 5 Call. (Va.) 143, cited by Chancellor Creson. It was held that by virtue of the statute the issue of a woman by a second marriage which took place during the lifetime of her first husband were legitimate after the death of their father. Among other states having the same or similar statutes are Arkansas, Ohio and Kentucky. Construing the respective statutes, the Courts of those states have reached the same result as did the Virginia court. Evatt, Adm'r, v. Mier, 114 Ark. 84, 169 S. W. 817, L. R. A. 1916C, 759; Ives v. Mc-Nicoll, 59 Ohio 402, 53 N. E. 60, L. R. A. 772, 69 Am. St. Rep. 780; Leonard v. Braswell, 18 Ky. 395, 36 S. W. 684, 36 L. R. A. 707.

This view is supported by the weight of authority. 7 Am. Jur. 631, Sec. 7; Note, 85 A. L. R. 499, 500.

 It will be observed that by virtue of the construction given Code Section 8453 in Deihl v. Jones, our statute is in substance and effect identical with the Virginia statute,—that is, the protection afforded the children exists without regard to whether the marriage or attempted marriage of the parents has been dissolved or annulled by a decree of a court. This interpretation of the statute emphatically manifests the great liberality with which our Supreme Court views the question.

Hence it cannot be denied that the statute does protect the issue of marriages which are void ab initio. Realizing this, the defendant, as said, seeks to draw a distinction between marriages which are void because contrary to public policy and those which, though not contrary to

public policy, are nevertheless void ab initio. This is a refinement which we think has no basis either in law or reason. All marriages absolutely void ab initio are held to be so because contrary to public policy, as declared by the constitution, legislative enactment or judicial decision.

■■ Statutes such as that under consideration being remedial in nature are to be liberally construed, whereas to sustain the defendant's contention would be to adopt a strict construction: indeed, it would be to read an excepttion into the statute which is justified neither by the context, the language or the legislative purpose in enacting it. As pointed out by the Court in Deihl v. Jones, supra, the statute was passed to protect the children ''as the innocent persons involved.'' [170 Tenn. 217, 94 S. W. (2d) 48.] Children of a bigamous marriage are no less innocent than are those of a marriage void for any other cause, and there is no sound reason in law or humanity to deny them the protection admittedly furnished by the statute to the issue of marriages void on other grounds. Cf. Deihl v. Jones, supra.

The defendant relies primarily upon two cases in this state, to wit, Jennings v. Jennings, 165 Tenn. 295, 54 S. W. (2d) 961, and Bennett v. Anderson, 20 Tenn. App. 523, 101 S. W. (2d) 148. It is true that in the former the Supreme Court held, as did the Chancellor and this Court, that an attempted marriage between a person divorced for adultery and the other guilty party during the lifetime of the former husband or wife, is prohibited by statute and absolutely void in Tennessee, so that no legal rights can grow out of such union and the children are illegitimate, incapable of inheriting property devised by their paternal grandfather to their ''father's sons''.

But in that case the Court did not consider the amendment to the original act brought about by the adoption of Code Section 8453. It is true that the Code of 1932 had been in effect several months when the Jennings case was decided. But neither the act as it originally stood or as amended by the Code was even mentioned in the opinion. Hence, we think it is not to be deemed a controlling authority on the construction of the statute as amended, especially in view of the interpretation adopted in the subsequent case of Deihl v. Jones, supra. What the result would have been in the Jennings case if the Court had considered the statute it is not for us to say. But it is interesting to note that in rendering the opinion for the Court, Chief Justice Green expressly said that the Court reached the conclusion indicated with reluctance.

In the other case relied upon, Bennett v. Anderson, 20 Tenn. App. 523, 101 S. W. (2d) 148, 150, the Middle Section of this Court had under consideration the legitimacy of a child of a marriage of parties whose adultery had constituted ground for a divorce obtained by the wife of the man involved. It was held that the marriage was void and the children of the attempted union were illegitimate regardless of where the marriage occurred, and could not inherit. The facts were that following the divorce on the grounds stated, the parties left the state and some time later returned to their former home in Cookeville and represented that they had been married in Florida. They lived together in Cookeville for several years, holding themselves out to the public as being husband and wife, and were so recognized. Two children were born to them, they being the ones held to be illegitimate by the Court. It appeared that the alleged marriage in Florida had taken place during the lifetime of the man's former wife who had obtained the divorce.

The Chancellor held there had been a valid marriage in Florida but that it would not be recognized in Tennessee. However, he further held that under Code Section 8453 as construed in Deihl v. Jones, supra, the two children were legitimate and capable of inheriting. This Court reversed the Chancellor's decision insofar as he held the children legitimate. There was no construction of the statute contained in Code Section 8453 and no reference to it except the statement that the Chancellor had based his decision upon it. The court did say, however, that the case of Deihl v. Jones, supra, "is not applicable to this case, as there is no proof or presumption of marriage in the case at bar, and under the statute such marriage is void" and "the issue of a void marriage are illegitimate." As we read the opinion in that case, the true basis of the refusal of the Court to hold that the children were legitimated by the statute is that there was "no proof or presumption of marriage". In that situation the Court seems to have thought the children to be in the same plight as they would have been had there been no marriage or attempted marriage at all. Cf. Vanderpool v. Ryan, 137 Va. 445, 119 S.E. 65.

We are not here concerned with the correctness of that decision. If there is any conflict between it and the view adopted in Deihl v. Jones as applied in the subsequent case of Duggan v. Ogle, supra, it cannot stand as a precedent.

■ The defendant does not challenge the conclusion reached with respect to the retrospective application of the statute; but it is well enough to say that we agree with the Chancellor.

■ From what has been said, it follows that as said by the Chancellor, Code Section 8453 operated to render Alice Rodgers the legitimate child of John Stevenson,

even though at the time of the latter's ceremonial marriage to Rosa Humphreys his prior marriage to Emma Hess still subsisted.

This conclusion renders it unnecessary to consider the second ground assigned by the Chancellor as a basis for his decision.

The result is that complainant is entitled to the relief granted by the Chancellor. The defendant will pay the costs including the cost of the appeal.

Baptist and Swepston, JJ., concur.