METROPOLITAN LIFE INSURANCE
COMPANY, Plaintiff,

v.

Rhoda J. CHASE, Charles W. Chase, Elinor R. Chase Jones, Georgia E. Chase Snell and Lawson W. Chase, Defendants.

Civ. A. No. 708–59.

United States District Court
D. New Jersey.

Dec. 6, 1960.

Morris Roth, New Brunswick, N. J., by Joseph Stevens, New Brunswick, N. J., for defendant Rhoda Chase.

Bassin & Bassin, Elizabeth, N. J., by Louis Lebowitz, Elizabeth, N. J., of counsel, for defendants Charles W. Chase, Elinor R. Chase Jones, Georgia E. Chase Snell and Lawson W. Chase.

WORTENDYKE, District Judge.

In this interpleader action, of which jurisdiction arises under 28 U.S.C. § 1335 by reason of diversity of citizenship between certain of the defendant claimants, and the involvement of more than $500.00, the Court is asked to determine rights to the proceeds of a life insurance policy, payable by the terms thereof to the widow, if any, or, in the absence thereof, to the children of the deceased insured.

Plaintiff insurer was authorized, by order of the Court, to deposit the proceeds of the policy which matured on the death of the insured, in the registry of the Court, after deduction therefrom of a counsel fee allowed to the attorneys for the plaintiff.

In lieu of trial, the claimants have submitted the case to the Court for decision upon a stipulation of facts, together with annexed exhibits and briefs upon the legal questions posed.

The policy involved was Group Policy No. 17,000–G, issued pursuant to the Federal Employees' Group Life Insurance Act of 1954, 5 U.S.C.A. § 2091 et seq., to Lawson W. Chase, who died July 9, 1957 while the policy was in force. No beneficiary was named in the policy but the proceeds thereof, $5,000, were made payable in accordance with the following beneficiary clause:

"If, at the death of the Employee, there be no designated Beneficiary as to all or any part of the insurance, then the amount of the insurance payable for which there is no designated Beneficiary shall be payable to the person or persons listed below surviving at the date of the Employee's death, in the following order of precedence: (1) To the widow or widower of the Employee; (2) If neither of the above, to the child or children of such Employee and descendants of deceased children by representation; * * *."

At the pretrial conference, claimants conceded that the insured married defendant Rhoda J. Chase ceremonially in the District of Columbia on October 29, 1941, and that the couple lived together as, and held themselves out to be, man and wife, in the District of Columbia as well as in the State of New Jersey. Both of the parties to that marriage represented to the licensing authority of the District that they were residents of the State of New Jersey. Indeed, Rhoda still resides in New Jersey, as do all of the other defendants except Lawson W. Chase, who resides in and is a citizen of the State of California. The defendants other than Rhoda are concededly children of the insured by a former wife, Georgia E. Chase, from whom the insured was divorced by a final decree of the former Court of Chancery of New Jersey on February 19, 1948. The question which the Court is called upon to answer is whether the defendant Rhoda J. Chase was the widow of the insured at the time of his death on July 9, 1957.

At no time after the entry of the divorce decree in the Court of Chancery of New Jersey, which dissolved the marriage between the insured and his former wife, Georgia, did the insured and Rhoda participate in any formal ceremonial marriage within the State of New Jersey or elsewhere. They continued to live together and to hold each other out as mutual spouses in the State of New Jersey and during frequent visits to the District of Columbia. Rhoda contends that when she participated in the ceremonial marriage with the insured in the District of Columbia in 1941, she honestly believed that no impediment to such a marriage existed, and that the insured had previously been divorced from his former wife. In support of this contention there is attached, as an exhibit to the stipulation of facts a copy of application of Georgia Ethel Chase, made in the State of New York on March 2, 1931, for a license to marry one Robert Ralph Dill, in which she declared under oath that no legal impediment existed to her right to enter into the marriage state; that her former husband was dead; and that a divorce had been granted in 1928. Whether the representations made by Georgia in the New York State marriage license application were known to the insured, or to Rhoda, at the time of their purported marriage does not appear from the stipulation of facts. From the copy of the New Jersey divorce decree of February 19, 1948, annexed to the stipulation of facts, I find that the insured was aware, at least as of that date, that he had theretofore been bound in matrimony to Georgia, and therefore had not been at liberty to marry another. In her sworn answers to interrogatories propounded by her co-defendants, Rhoda states that at the time of her marriage to the insured, on October 29, 1941, in the District of Columbia, she knew that the insured had been previously married, that he had four children by his previous marriage, but that she was given to understand, from an application by his previous wife to remarry, and from a receipt from his attorney, that the previous marriage had been terminated. Rhoda further swears that she was unaware of the insured's New Jersey divorce decree from Georgia Chase of February 19, 1948, when she was residing with the insured in New Jersey. Rhoda's contention that she is the lawful widow of the deceased insured is grounded upon her claimed ceremonial marriage in the District of Columbia on October 29, 1941, followed by her cohabitation with him, and holding him out as her

husband, continuously thereafter, both in the District of Columbia and in the State of New Jersey, with the full intention and belief that they were legally man and wife. She further sets forth that she paid, for the account of the insured in connection with his last illness and funeral, medical, hospital, ambulance and funeral and burial expenses totalling $1,579.80, for which she has not been reimbursed.

 Similarly to the situation in Oliver v. Oliver, 1950, 87 U.S.App.D.C. 334, 185 F.2d 429, when our insured attempted to marry Rhoda in the District of Columbia, his prior marriage still remained undissolved. Therefore, the then attempted second marriage was in violation of the law of the District of Columbia and therefore void. See 30 D.C.Code (1951) § 101. Such invalidity is because of inconsistency with the public policy expressed in the statute law. Oliver v. Oliver, supra. If we assume that Rhoda was not chargeable with actual or imputed knowledge of the existence of the impediment to the legal marriage to the insured, estoppel cannot be availed of to defeat the public policy of the District. If the ceremonial marriage held in the District of Columbia was invalid, can the parties avail themselves of a common law marriage to circumvent the invalidity of a ceremonial marriage? Although no longer recognized as legal in New Jersey (see N.J.S.A. 37:1–10), a common law marriage is recognized as legal in the District of Columbia and " 'The removal of an impediment while parties continue to live together as husband and wife gives rise to a common-law marriage.' " McVicker v. McVicker, 1942, 76 U.S.App.D.C. 208, 130 F.2d 837. I am satisfied from the evidence before me that the insured and Rhoda lived together and held themselves out as husband and wife in the District of Columbia and in the State of New Jersey from the date of the ceremonial marriage in the District in 1941 to the date of the insured's death, a matter of approximately 16 years. Throughout this period, however, the two individuals were domiciled in New Jersey, although they frequently visited friends in the District of Columbia for periods of a few days at a time.

If the marriage ceremony in which the insured and Rhoda participated in the District of Columbia, in 1941, was ineffective to create a binding marital contract, by reason of the existence of an undissolved marriage then existing between the insured and his former wife, then surely no matrimonial status could arise between Lawson and Rhoda prior to the dissolution of Lawson's prior marriage by the 1948 divorce. Did a common law marital status arise upon the entry of the divorce decree in New Jersey, and if so, was it lawful in the District or in New Jersey, or in both? It could not arise under the New Jersey law because of the provisions of N.J.S.A. 37:1–10. Having in mind the continued residence of both of the alleged spouses in New Jersey, could they, by jointly holding themselves out as man and wife upon the occasions of their visits to the District of Columbia, create a common law marriage status which would be recognized as valid in New Jersey, despite the provisions of the statute of that State?

 Unless the insured's 1948 divorce decree effected a commencement of a common law marriage to Rhoda, valid in the District of Columbia, where they had previously entered into a ceremonial marriage, his status as her spouse could not be so treated in New Jersey. New Jersey has legislatively expressed its public policy against common law marriages. See N.J.S.A. 37:1–10. When the principals went to the District of Columbia to be married, it was not possible for them to achieve that status legally. Upon their return to New Jersey, the State of their domicile, they therefore had no such status to bring with them. Intermittent visitations to the District of Columbia after the entry of the New Jersey divorce decree in 1948 could not suffice to alter the domiciliary status. As Judge Meaney of this Court said in Brown v. United States, in 1947,

72 F.Supp. 153, at page 155, affirmed 3 Cir., 1947, 164 F.2d 490, certiorari denied 1948, 333 U.S. 873, 68 S.Ct. 902, 92 L.Ed. 1149: "The contention of the plaintiff would have the removal of the impediment to a legal marriage constitute a validation of the originally invalid ceremonial marriage, which is nowhere provided for in the Statute (N.J.S.A. 37:1–10). It could by no means be said to revive and legitimize a null and void marriage under any circumstances, for a nullity being something which never existed cannot be 'revived'." In Winn v. Wiggins, App.Div.1957, 47 N.J.Super. 215, 135 A.2d 673, an alleged wife sought a declaratory judgment establishing the validity of a common law marriage claimed to have taken place in Florida or Georgia, where such marriages were recognized as legal. The trial court was affirmed in dismissing the complaint because it appeared that plaintiff had entered into the alleged common law marriage in one or the other or both of the States which recognized such marriages, with knowledge that her alleged husband had participated in a prior ceremonial marriage, presumably valid, with another woman, and the plaintiff failed to request a ceremonial marriage after she had learned of the death of the previous wife. The principals in that relationship lived together as man and wife in Jersey City, New Jersey, from 1941 until the death of the man, and posed as husband and wife after the year of the alleged common law marriage. After having lived together under these circumstances for some time, they went south with the intention of participating in a ceremonial marriage, but, instead, attempted to create a common law marriage while they were in the States of Georgia and Florida. Not only did the Court find the evidence insufficient to show the entry into a common law marital relationship in either of the southern states, but it concluded that the plaintiff's admitted knowledge of the existence of the prior spouse and her failure to request a ceremonial marriage after she learned of the latter's death, "would properly call for the invocation of the doctrine of unclean hands, in itself fatal to her demand for affirmative relief by way of an action for declaratory judgment." The opinion of Judge Goldmann in Winn, supra, 47 N.J.Super. at page 224, 135 A.2d at page 677, concludes as follows:

"Although we are of the opinion that the strong public policy evinced by the enactment of the 1939 statute, N.J.S.A. 37:1–10, is best effectuated by declaring that persons domiciled in New Jersey cannot leave this State, enter into a common-law marriage in a state where such marriages are allowed, and then return home and ask our courts to recognize that marriage, we do not find it necessary to decide the point in light of our decision on the facts."

(The Appellate Division found the trial judge warranted in disbelieving plaintiff's testimony as to how the alleged common law marriage took place.) It is my view that the public policy of New Jersey as expressed in the statute precludes recognition of any common law marital relationship which may have been acquired through the cohabitation and holding out upon the occasions of the parties' visits to the District of Columbia while retaining their respective domiciles in New Jersey.

In Tegenborg v. Tegenborg, App.Div. 1953, 26 N.J.Super. 467, 98 A.2d 105, plaintiff wife sued her husband for non-support of herself and of her child, allegedly by him. Defendant husband claimed that their marriage was void because the woman had previously married another from whom she thereafter was separated. During the period of that separation, plaintiff and defendant commenced living together in Florida, as husband and wife, while her previous husband still lived, and she remained undivorced from him. After this cohabitation had commenced, the parties to the suit entered into a ceremonial marriage in Florida, concededly entered into in good faith by the woman. After this ceremonial marriage, her former hus-

band obtained a divorce decree. The parties to the cited case continued to live together as husband and wife in Florida, after which they moved to New Jersey. It was during their residence, as husband and wife, in the latter jurisdiction that she left him because of cruelty and non-support. The parties were held to be legally husband and wife. The opinion of the Appellate Division makes no reference to the New Jersey statute.

In Dacunzo v. Edgye, 1955, 19 N.J. 443, 117 A.2d 508, 515, however, a husband sued for annulment upon discovery that the woman had misrepresented to the license clerk that she was single while in fact she had a husband living, the Supreme Court distinguished Tegenborg because, as was stated by the Appellate Division (1955, 33 N.J.Super. 504, at page 513, 111 A.2d 88, at page 93): "Since the Tegenborgs were legally husband and wife in Florida, they occupied the same status here. Judge Francis emphasized that the Court in Tegenborg had no intention of indicating what effect the 1939 statute would have had if the entire matter had been localized in New Jersey." Dacunzo further pointed out that in Danes v. Smith, App.Div.1954, 30 N.J.Super. 292, 104 A.2d 455, 458, "the parties complied with the formal requisites of license and ceremony in good faith, unconscious of an obstacle in the path of a valid marriage, and then continued to live together as man and wife after the removal of the bar." Dacunzo, however, reasoned that the ceremonial marriage was bigamous and that the woman "by her wilful deceit in failing to disclose her prior marriage and divorce perpetrated a fraud upon the license clerk who had a quasi-judicial duty to determine whether or not a legal impediment to the marriage appeared to exist." In Dacunzo, the Court held the purported marriage absolutely void because of failure to comply with the statutory requirements of a license and a ceremonial marriage.

Although the effect of the New Jersey statute, N.J.S.A. 37:1–10, upon the principle applied in Tegenborg, was not decided in Danes v. Smith, supra, Judge (now Justice) Francis, said, 30 N.J. Super. at page 298, 104 A.2d at page 458: "Strangely enough, a holding that a common-law marriage is barred by the statute in the instance described would bring about a most anomalous situation from a public policy standpoint. When, as here, parties to a ceremonial marriage enter into the relationship with knowledge that an impediment exists, they are barred by estoppel or unclean hands from asserting its invalidity, and their status is unaffected by the statute. Yet where two persons in good faith undergo a ceremonial marriage unaware of an invalidating obstacle and that obstacle is subsequently removed, continuance of cohabitation matrimonially meant will accomplish nothing for them; their state will still be concubinage. It has been suggested that in such cases there is social and legal justification for the recognition of common-law marriage." The same opinion explicitly points out that the problem discussed in Danes "was neither presented, decided, nor intended to be decided in the Tegenborg case. * * * The Tegenborg opinion did not make clear to the bar and to the trial courts that the 1939 statute banning common-law marriage was not at all involved in that case, and that there was no intention present at the time to indicate what effect the legislation would have had if the entire matter had been localized in New Jersey." In Danes, the question of the validity of the marriage was incident to the man's prayer for relief by way of a partition of real estate owned in common. The Court held that although the man was barred under the doctrine of unclean hands from denying the validity of the purported marriage with the woman co-grantee, who had a then living spouse, the purported marriage was ineffective, upon the removal of the impediment to the marriage, to render the co-grantees' tenants by the entirety. Therefore, the Court concluded that the man was entitled, as a tenant in common, to the partition of real estate and to an annulment of the marriage.

The ultimate decision resulted from the application of the principle that if the parties to a deed are not actually husband and wife, their designation as such, even in the honest belief that they are married, establishes a tenancy in common and not a tenancy by the entirety. Where the marriage contracted in good faith was invalid because of an impediment, and the realty was deeded to the two individuals as husband and wife while the impediment persisted, a subsequent removal of the impediment did not transform the status of the grantees from that of a tenancy in common to one by the entirety.

■■ Tatum v. Tatum, 9 Cir., 1957, 241 F.2d 401, 406, states that "when a person has contracted two successive marriages, a presumption arises in favor of the validity of the second marriage, and the burden is upon the party attacking the validity of the second marriage to establish existence of the first marriage, and that such marriage has not been dissolved by death, divorce or annulment at the time of the second marriage." Such a presumption, however, is overcome here by the evidence of the existence of the first marriage and the absence of dissolution thereof. The purported ceremonial marriage of insured and Rhoda in the District is not the beneficiary of the presumption of validity. In Tatum the insured was survived by children by a wife who had divorced him and by a woman with whom he had entered into a ceremonial marriage in Arizona prior to the divorce. The parties to the latter marriage cohabited, both before and after the divorce, in California, in which State both of them were domiciled, and, for a shorter period, in Texas. Common-law marriages were permitted in the latter jurisdiction, and California recognized common law marriages validly created in states which allowed them. The essential elements of a common law marriage in Texas included a mutual agreement to be husband and wife for life, cohabitation as such, and a holding out to the public as having such a status. However, the trial court found that the requisite "agreement to be husband and wife" had not been made while the parties were in Texas. The Federal Court in California, applying Texas law, concluded that the lack of the requisite agreement precluded achievement of common law spousehood. The Court also rejected the contention that a putative marriage resulted from the Arizona ceremony, because the evidence failed to disclose that the parties entertained "a good faith belief in the validity of the marriage at its inception * * (and continuing) throughout the life of the marriage." When she "discovered the subsistence of the first marriage," said the Court in Tatum, "she ceased to occupy, if she ever had, the status of putative spouse." The award of the Federal Employees' Group Life Insurance policy proceeds to the surviving children of insured's first wife was affirmed.

The District of Columbia ceremonial marriage in our case could not achieve validity as a common law marriage, even though such marriages are recognized as valid (under other circumstances) in that jurisdiction. Any cohabitation and holding out by the insured and Rhoda of themselves as husband and wife, in the District, or in New Jersey, would be bigamous and meretricious as long as his marriage to Georgia remained undissolved by divorce. Insured's divorce from Georgia in 1948 followed by his continued cohabitation with Rhoda and holding her out as his wife, did not transform his relationship to her into that of a legal marriage.

■ From the date of his divorce from Georgia in 1948, until his death, insured resided and cohabited with Rhoda in New Jersey, and held her out as his wife, both in that jurisdiction and upon occasions of their visits to the District of Columbia. The legality of their relationship must be determined by the law of their joint domicile. I find that domicile to be New Jersey. When the impediment of the prior marriage had been removed by the divorce decree, these persons could not have entered into a

legal "common law" marriage in New Jersey. Could they then, as continuing New Jersey domiciliaries, achieve, by occasional visits to the District of Columbia, a status as "common law" spouses which they could bring back with them to New Jersey, and which could acquire legality in that jurisdiction? " 'The removal of an impediment while parties continue to live together as husband and wife gives rise to a common-law marriage.' " McVicker v. McVicker, supra [76 U.S.App.D.C. 208, 130 F.2d 837]; Thomas v. Murphy, 1939, 71 App.D.C. 69, 107 F.2d 268. This was the law of the District of Columbia at the time Rhoda participated in the marriage ceremony there and at the time of the removal of the impediment by the entry of the New Jersey divorce decree in 1948. It is the rule in the District of Columbia that "when a man and woman who are legally capable of entering into the marriage relation mutually agree, in words of the present tense, to be husband and wife, and consummate their agreement by cohabiting as husband and wife, a common-law marriage results." United States F. & G. Co. v. Britton, D.C.Cir. 1959, 269 F.2d 249, 251. While a marriage, if valid by the law of the State where entered into, will be recognized as valid in every other jurisdiction, Loughran v. Loughran, 1934, 292 U.S. 216, 54 S.Ct. 684, 78 L.Ed. 1219, that rule implies that the validity existed at the time of the entry into the relationship; in this case, October 29, 1941. No such chronological coincidence existed here. Comity between New Jersey and the District of Columbia would not require recognition by the former of a status which may have arisen in the latter if contrary to the policy of the former. See Wilkins v. Zelichowski, 1958, 26 N.J. 370, 373, 140 A.2d 65; Winn v. Wiggins, supra. I discern in N.J.S.A. 37:1–10 an expression of policy by the State of New Jersey to refuse to recognize as valid a common law marriage entered into by its domiciliaries after December 1, 1939. Therefore, as far as the New Jersey law is concerned, Rhoda did not

become the lawful widow of the insured. He left no lawful widow, because his former marriage to Georgia had been dissolved. No beneficiary having been named by insured, who was not survived by a widow, his surviving children are entitled to share equally in the proceeds of the policy by the terms of its provisions, and of 5 U.S.C.A. § 2093. United States v. Snyder, 1949, 85 U.S.App.D.C. 198, 177 F.2d 44.

This opinion shall constitute my findings of fact and conclusions of law. Judgment may be entered in accordance with the views herein expressed.