**OLD REPUBLIC INSURANCE COMPANY**

v.

**Dallas Ray CHRISTIAN, Jr., et al.**

**Civ. No. 3–74–274.**

United States District Court,
E. D. Tennessee, N. D.

Jan. 8, 1975.

Earl R. Layman, Knoxville, Tenn., for Old Republic Ins. Co.

Joseph M. Tipton, Ritchie & Tipton, Knoxville, Tenn., Harold G. Jeffers, Oneida, Tenn., Thomas Privette, Jr., Knoxville, Tenn., for defendants.

## MEMORANDUM

ROBERT L. TAYLOR, District Judge.

This is a diversity interpleader action filed by Old Republic Insurance Company seeking a determination whether Cathy Grimes Christian is entitled to share with three minor defendants workmen's compensation benefits arising out of the work-related death of the deceased, Dallas Ray Christian. 28 U. S.C. § 1335(a)(1). The principal question presented to the Court is the matrimonial status of Cathy Christian and the consequent effect of that status under the Tennessee Workmen's Compensation Act. 50 Tenn.Code Ann. § 901 et seq. The controlling facts have been stipulated to the Court and are set forth at this point:

"(1) That plaintiff is a Pennsylvania corporation with its principal office at 414 W. Pittsburg Street, Greensburg, Pennsylvania, and that it is the insuror of West Coal Corporation, a Tennessee corporation, with its princiapl office in Oneida, Tennessee, in the matter of workmen's compensation insurance under its policy of insurance.

"(2) That Dallas Ray Christian sustained fatal injuries arising out of and in the course of his employment with West Coal Corporation on July 16, 1974, while piloting an aircraft which crashed in Knox County, Tennessee, and that the weekly salary of Dallas Ray Christian at the time of his death was $175.00 per week.

"(3) That Dallas Ray Christian and Gloria Mae McCormick were ceremoniously married on March 15, 1962, in Portsmouth, Virginia, and to this marriage were born two children, Dallas Ray Christian, Jr., born December 18, 1964, and Alicia M. Christian, born July 26, 1968. That a final decree of absolute divorce was entered on April 1, 1970, by the Circuit Court of the City of Virginia Beach, Virginia, dissolving this marriage, and that said minor children are still living and are parties defendant to this action. That said minor children are living with their mother who has not remarried.

"(4) That Dallas Ray Christian and Barbara Ruth Hughes were ceremoniously married on May 5, 1970, in Cambridge, Maryland, and to this marriage was born one child, Deborah Renee Christian, born July 1, 1971. That a final decree of absolute divorce was entered on September 5, 1973, by the Circuit Court for Talbott County, Maryland, dissolving this marriage, and that said minor child is still living and is a party defendant to this action. That said minor child is living with her mother, who has not remarried.

"(5) That Dallas Ray Christian and Cathy Grimes took part in a ceremony on April 7, 1972, in London, Kentucky,

by which they were purportedly married and that no children were born of this union.

"(6) That on the afternoon of July 23, 1974, after Cathy Grimes Christian had appeared in the Scott County Court at Huntsville, Tennessee, with counsel in the matter of petition for letters of administration, Cathy Grimes Christian was first informed of the marriage of Dallas Ray Christian to Barbara Ruth Hughes and that a child was born to this marriage. That this information was furnishd to her by Mr. Roger West, an official with West Coal Corporation.

"(7) That at all times from April 7, 1972, until the death of Dallas Ray Christian on July 16, 1974, Dallas Ray Christian and Cathy Grimes Christian cohabited as husband and wife and held themselves out as such, and Cathy Grimes Christian received her entire support from Dallas Ray Christian during this period of time and, thus, was totally dependent on said Dallas Ray Christian.

"(8) That the said cohabitation of Dallas Ray Christian and Cathy Grimes Christian from and after September 5, 1973, until July 16, 1974, was continuous and that said persons had moved to Oneida, Tennessee, in August, 1972, and that it was the intent of Cathy Grimes Christian to be and, in fact, they were domiciled in Oneida, Tennessee. That said Dallas Ray Christian and Cathy Grimes Christian cohabited as husband and wife for various periods of time, up to ten days, with the intention of returning to their home in Oneida, Tennessee, in the states of Florida, Georgia, Alabama, Virginia and West Virginia. That said out-of-state cohabitation took place while said persons were on vacation or while Dallas Ray Christian was working or receiving flight training. The said Dallas Ray Christian and Cathy Grimes Christian resided at the time of the death of Dallas Ray Christian on July 16, 1974, in the State of Tennessee.

"(9) That the defendants who are to share in the benefits provided in this cause are entitled to share in said benefits in equal shares of the maximum benefits allowable under Tennessee law."

■■ It is elementary that the deceased's marriage to Cathy Christian on April 7, 1972 in London, Kentucky was bigamous and void ab initio due to deceased's disability in the form of a prior subsisting marriage between him and Barbara Ruth Hughes. Taliaferro v. Rogers, 35 Tenn.App. 521, 248 S.W.2d 835, 837 (1951); Knight v. Knight, 62 Tenn.App. 70, 458 S.W.2d 803 (1970). This disability remained as a barrier to a valid marriage until September 5, 1973 when deceased's second marriage was formally dissolved. Subsequent to the removal of such disability the deceased and Cathy Christian were free to enter into a valid marital relationship, and it is the contention of Cathy Christian that in this case, although a common law marriage could not be established in Tennessee, Smith v. North Memphis Savings Bank, 115 Tenn. 12, 89 S.W. 392 (1905), such a marriage could be established in either Alabama or Georgia, both of which recognize common law marriages. McClurkin v. McClurkin, 206 Ala. 513, 90 So. 917 (1921); Huffmaster v. Huffmaster, 279 Ala. 594, 188 So.2d 552 (1966); Allen v. State, 60 Ga.App. 248, 3 S.E.2d 780; Campbell v. Allen, 208 Ga. 274, 66 S.E.2d 226 (1951). If the requirements were satisfied for the creation of a common law marriage in either Alabama or Georgia, then Tennessee would recognize the relationship as valid and accord that marrige the same legal rights and obligations as one originally created in Tennessee. Shelby County v. Williams, 510 S.W.2d 73 (Tenn.1974); Troxel v. Jones, 45 Tenn.App. 264, 322 S.W.2d 251 (1959); Andrews v. Signal Auto Parts, Inc., Tenn., 492 S.W.2d 222; Madewell v. United States, 84 F.Supp. 329 (E.D. Tenn.1949). Thus, reduced to its essentials the issue is whether, under the stipulated facts, a common law marriage

was established by the deceased and Cathy Christian in either Alabama or Georgia thereby entitling her to share in workmen's compensation benefits. 50 Tenn.Code Ann. 1013. The Court is satisfied that under the limited circumstances here Cathy Christian and the deceased met the requirements for the creation of a common law marriage in either Alabama or Georgia.

■ The essential elements for the creation of a common law marriage in either Alabama or Georgia, are basically the same in both states. Thus in the former state the Alabama court speaking in Huffmaster v. Huffmaster, supra, submitted that:

> (S)uch a marriage need not be solemnized in any particular ceremony. There must simply be an actual and mutual agreement "to enter into the matrimonial relationship, permanent and exclusive of all others, after which there was a public recognition of the existence of the common-law marriage."

188 So.2d at 554.

Similarly, in Georgia in Chance v. Chance, 60 Ga.App. 889, 5 S.E.2d 399 (1939) the requirements for a common law marriage in that state were generally snythesized:

> . . . 'By the common law and the law of this state, a mutual agreement to be husband and wife, by parties able to contract, followed by cohabitation, is recognized as a valid marriage.' Dale v. State, 88 Ga. 552, 556, 15 S.E. 287, 288. . . . In 1 Andrews' Am.L. (2d Ed.) 486, it is said:

> "Where the only proof in the case is of continuous cohabitation, the presumption is that it was lawful. Where to this proof is added some affirmative proof of holding themselves out as man and wife, it adds so much to the force of the presumption, and

length of time strengthens the probative force of the presumption. This presumption of marriage from connubial habit is one of the strongest known to the law, and is to be repelled only by clear evidence.

5 S.E.2d 400–401 [1]

It can be readily observed that in both states the requisite elements are essentially the same, namely, (1) a mutual agreement to enter into a matrimonial relationship, (2) cohabitation and (3) community reputation as husband and wife. Citing Metropolitan Life Insurance Company v. Chase, 189 F.Supp. 326 (N.J.1960), Dallas and Alicia Christian contend that since Cathy and the deceased established no domicile in either Alabama or Florida, or otherwise evidenced no intent to remain in those states they could not have entered into a common law relationship. The Court, however, cannot inject a domicile or temporal requirement into the elements of a common law marriage in the absence of any Alabama or Georgia statutory or caselaw directive. While the District Court for New Jersey in *Chase, supra,* concluded that plaintiff and insured's intermittent visits to a jurisdiction recognizing common law marriage would not be recognized as creating a valid New Jersey marriage, the court further concluded that "the public policy of New Jersey as expressed in the statute precludes recognition of any common law marital relationship which may have been acquired through cohabitation and holding out upon the occasions of the parties' visits to the District of Columbia while retaining their respective domiciles in New Jersey," 189 F.Supp. at 330. In the opinion of the Court, the Tennessee courts have not similarly looked to domicile in determining the validity of an out of state marriage. Morgan v. McGhee, 24 Tenn. 13 (1844); Smith v. Mitchell, 185 Tenn. 57, 202 S.W.2d 979 (1947); Madewell v. United States, 84 F.Supp. 329, 336 (E.D.Tenn.

---

1. See also Campbell v. Allen, 208 Ga.App. 274, 66 S.E.2d 226 (1951); Johnson v. Johnson, 96 Ga.App. 84, 99 S.E.2d 352 (1957).

1949); *cf.* Andrews v. Signal Auto-Parts, Inc., 492 S.W.2d 222 (Tenn.1972). This Court in *Madewell* concluded that where plaintiff visited the insured, a serviceman in the Air Force, on several occasions for a number of days at his station in Alabama, while holding themselves out as man and wife, a sufficient period of cohabitation was satisfied. 84 F.Supp. at 329; *see also* Metropolitan Life Insurance Company v. Holding, 293 F.Supp. 854 (E.D.Va.1968). Likewise, the Court is not advised that either Alabama or Georgia prescribe any minimum period of cohabitation for the creation of a common law marriage. The Court cannot conclude that cohabitation in a nondomicilliary state for a ten day period is an insufficient period of time to create a common law marriage, under the circumstances of this case and assuming that the requirements for a common law marriage are otherwise met.

▮▮ In summary, from the stipulation and record before the Court, it is apparent that Dallas Christian and Cathy Christian were ceremoniously married in London, Kentucky on April 7, 1972 and that at least on the part of Cathy Christian such marriage was entered into and maintained until deceased's death in good faith without knowledge of deceased's second marriage to Barbara Ruth Hughes. It is further apparent as stipulated by the parties that during their entire period of continuous cohabitation, approximately 2⅓ years, including their intermittent residency in Alabama and Georgia, that they were not secretive but held themselves out to the public as man and wife and that Cathy Christian was entirely dependent upon Dallas Christian. The Court is satisfied that the deceased and Cathy Christian created a valid common law marriage in Alabama and Georgia and that Tennessee would recognize that marriage as valid in this state.

▮ Remaining before the Court is the contention made by the minor children of the deceased employee that they are total dependents, although they were only partially supported through deceased's periodic child support payments, and, additionally, that they are dependent orphans under 50 Tenn.Code Ann. § 1013(c)(5) and are therefore exclusively entitled to the workmen's compensation benefits. In Superior Motors, Inc. v. Morris, 489 S.W.2d 253 (1973), the Supreme Court of Tennessee held that a legitimate child under sixteen years of age was conclusively presumed to be wholly dependent on the deceased for workmen's compensation purposes even though the deceased provided partial support. Likewise, in following the *Morris* case it is apparent that in this case the minor children of deceased by his former marriages are totally dependent. The Court, however, is not persuaded to adopt the contention that under the facts of his case the minor children of deceased qualify as dependent orphans to the exclusion of Cathy Christian. It appears from an examination of that caselaw construing the statutory term "dependent orphan" that that status is granted only where there exists no surviving widow or, the surviving widow is otherwise not entitled to receive benefits. Here, Cathy Christian is the legal widow of the deceased and fully qualifies as a beneficiary under 50 Tenn.Code Ann. § 1013(a)(3), (c)(2), (3). In Pruden Coal & Coke Co. v. Johnson, 167 Tenn. 358, 53 S.W.2d 384 (1932), the deceased employee had two minor children by a first marriage, and, after the deceased and his first wife had been voluntarily separated for several years, the deceased entered into a second relationship to which one minor was born. The Court, finding that the woman with whom the deceased was living at his death was not his wife and therefore entitled to no benefits and that the first legal wife had remained apart from deceased, concluded that the children should be treated as dependent orphans. 167 Tenn. at 360, 53 S.W.2d 384. Factually similar, in Superior Motors, Inc.

**340**

v: Morris, 489 S.W.2d 253 (Tenn.1973), where the former wife of the deceased employer had married another man and therefore not entitled to benefits under the statute, the Court citing *Pruden Coal, supra,* classified the only child of deceased's marriage as a dependent orphan although the mother was still living. Both the *Superior Motors* and *Pruden Coal* cases, however, are inopposite to the case before the Court since here Cathy Christian qualifies as the legal wife of the deceased employee. See also Summers v. Tennessee Eastman Corporation, 169 Tenn. 335, 87 S.W.2d 1005; Whitwell Coal Company v. Cornett, 175 Tenn. 433, 135 S.W.2d 456 (1939). Further, a plain reading of 50 Tenn. 1013(c)(2), (3) does not compel a finding that in this instance the children of deceased by former marriages are the only beneficiaries under Section 1013 to the exclusion of Cathy Christian:

> Widow and Child. If the deceased employee leaves a widow and one (1) or more dependent children, there shall be paid to the widow for the benefit of herself and such child or children, sixty-six and two-third per cent (66⅔%) of the average weekly wages of deceased.

If the legislature had intended to restrict the provisions of Section 1013(c)(2) to children of deceased's last marriage then certainly such a qualification would have been made explicit. Rather, the Court is of the opinion that the scope of Section 1013(c)(2) includes children of former as well as subsequent marriages.

In conclusion, having reviewed the record and the law in this case, the Court finds that Cathy Grimes Christian is the legal wife of the deceased and that distribution should be made pursuant to 50 Tenn.Code Ann. § 1013 and the stipulation heretofore entered into by the parties.