IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs November 24, 2004

## GLENDA EMMIT v. RICHARD EMMIT, ET AL.

**Appeal from the Circuit Court for Bledsoe County**
**No. 3586     Buddy D. Perry, Judge**

---

**No. E2004-00201-COA-R3-CV - FILED FEBRUARY 24, 2005**

---

Glenda Emmit ("the plaintiff") brought a petition seeking to annul her marriage to Richard Emmit. She alleged that, unbeknownst to her, her prior marriage to James Randall Medley had not been dissolved at the time of her attempted marriage to Mr. Emmit. She claims that this prior marriage prevented her from contracting a valid marriage with Mr. Emmit. The trial court held that the co-administrators of Mr. Medley's estate (collectively "the co-administrators") were indispensable parties and ordered the plaintiff to amend her complaint to add them. Following a bench trial, the court below entered a judgment denying the plaintiff's petition for annulment on the ground that she had "unclean hands" and was therefore estopped from averring either that her marriage to Mr. Emmit was invalid or that her marriage to Mr. Medley was not dissolved. The plaintiff appeals. We reverse the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Reversed; Case Remanded with Instructions**

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which D. MICHAEL SWINEY and SHARON G. LEE, JJ., joined.

M. Keith Davis, Dunlap, Tennessee, for the appellant, Glenda Emmit.

Howard L. Upchurch, Pikeville, Tennessee, for the appellees, Helen Medley and Omie Ray Medley, co-administrators of the Estate of James Randall Medley.

No appearance on behalf of Richard Emmit.

## OPINION

### I.

The plaintiff was first married to James Randall Medley in February, 1986. They were subsequently divorced by judgment entered March 31, 1994. Following their divorce, the plaintiff

and Mr. Medley continued to interact and live together for periods of time. A few years later, they decided to remarry. They obtained a marriage license on May 16, 1997, which was signed only by Mr. Medley, and they remarried on May 17, 1997. Reverend Beecher Rogers, the plaintiff's brother-in-law, presided over the ceremony, which took place at the home of the plaintiff's sister in Bledsoe County. Approximately 20 to 25 family members were present.

Two to three days after the ceremony, the plaintiff and Mr. Medley decided to have their marriage annulled. The plaintiff went with Mr. Medley to the courthouse. As she was ill as a result of heart problems, she waited in the car. Mr. Medley went into the courthouse and returned with a document for the plaintiff to sign. He subsequently informed her that the marriage had been annulled. Testimony at trial evidenced that Mr. Medley requested a loan from his mother so that he could separate from the plaintiff. Helen Medley wrote a check dated July 1, 1997, to Mr. Medley in the amount of $600 with the notation, "Glenda for divorce." Helen Medley testified at trial, however, that she did not know precisely how her son intended to use the money.

On March 17, 1999, approximately 20 months after the presumed annulment, the plaintiff married Richard Emmit. Since Mr. Emmit was incarcerated at the time – as he was at all relevant times thereafter – the parties were married at the prison. However, while married to Mr. Emmit, the plaintiff lived with Randy Harris, who resided behind the prison. Although the plaintiff was still married to Mr. Emmit during that time, she testified that she and Mr. Emmit "had called it quits." She neglected to take legal action because she allegedly did not have the finances to do so.

At some time in October, 2000, Mr. Medley contacted the plaintiff and informed her that he had not had their marriage annulled. Mr. Medley also informed her that he was engaged to Mary Johnson. Two weeks later, on November 2, 2000, Mr. Medley was killed in a car accident. The co-administrators of Mr. Medley's estate filed a petition to probate Mr. Medley's estate for the purpose of bringing a wrongful death suit in Van Buren County. The plaintiff filed a petition to intervene in that action as Mr. Medley's wife.

In March, 2002, the plaintiff filed this petition for annulment of her marriage to Mr. Emmit. She claims that her prior marriage to Mr. Medley renders her marriage to Mr. Emmit void. By answer filed April 15, 2002, Mr. Emmit responded that the information contained in the plaintiff's petition was true, that grounds existed for awarding the plaintiff an annulment, and that he had not received any legal advice from the plaintiff's attorneys in this case.

The matter first came before the trial court on May 29, 2002, at which time the court ordered the plaintiff to amend her petition to reflect the effect of the proposed annulment on the disposition of Mr. Medley's estate. Since Mr. Medley died intestate, an annulment would entitle the plaintiff to take his entire estate. Consequently, the court held in its June 14, 2002, order that the co-administrators of the estate were indispensable parties under Tenn. R. Civ. P. 19. The plaintiff filed her amended petition on June 24, 2002.

The co-administrators filed their answer on July 21, 2003, in which they raised the following affirmative defenses: (1) that since the marriage between the plaintiff and Mr. Medley was invalid because the ceremony was not solemnized by a statutorily-authorized official, she was not married to Mr. Medley when she attempted to marry Mr. Emmit; (2) that the application of the plaintiff and Mr. Medley for a marriage license was invalid because of its failure to comply with the statutory requirements set forth in Tenn. Code Ann. § 36-3-301 (2001), *et seq.*; (3) that the plaintiff and Mr. Medley did not reside together during this marriage, thereby rendering it invalid; (4) that the plaintiff should be estopped from denying her status as a single person on the day of her marriage to Mr. Emmit; (5) that the plaintiff is guilty of "bad faith and unconscionable conduct;" consequently she comes before the court with "unclean hands," barring her from annulling her marriage to Mr. Emmit; and (6) that should the allegations be proven true, she is guilty of bigamy and, as such, is not entitled to the relief sought.

At a bench trial on November 24, 2003, the trial court received testimony from the plaintiff and the co-administrators. In support of her case, the plaintiff filed as an exhibit a letter dated June 17, 2002, from the Office of Vital Records certifying that a search of divorce certificates from 1997 through 2002 did not reflect that the plaintiff's marriage to Mr. Medley had been dissolved. The trial court rendered its opinion from the bench and declined to grant the annulment. By written order entered February 6, 2004, the trial court dismissed the plaintiff's petition, holding that the plaintiff was estopped, (1) from denying the existence and validity of the marriage between herself and Mr. Emmit, and (2) from denying the lack of a valid prior marriage with Mr. Medley or the dissolution of the prior marriage. The plaintiff appeals. As we find that the plaintiff was legally entitled to an annulment, we reverse the judgment of the trial court for the reasons set forth herein.

II.

The plaintiff appeals the judgment of the trial court on the ground that Tennessee does not recognize a second marriage contracted at a time when one of the parties has a prior subsisting marriage. The plaintiff further argues that the trial court incorrectly applied the doctrine of unclean hands. The co-administrators retort that the trial court properly declined to grant the plaintiff an annulment as she was estopped from asserting that she had a prior valid marriage to Mr. Medley or that such marriage was dissolved.

The issue before us is whether there were grounds for an annulment, and, if so, whether the doctrine of unclean hands constitutes a defense to granting an annulment. As we hold that proper grounds exist for granting an annulment, and that the doctrine of unclean hands does not constitute a defense to the plaintiff's request, we reverse the judgment of the trial court.

III.

In matters heard by a trial judge sitting without a jury, we review the trial court's findings of fact *de novo*, according a presumption of correctness to those findings. Tenn. R. App. P. 13(d). We will not disturb those findings unless the evidence preponderates against them. ***Id.*** We accord

no such deference to the trial court's conclusions of law, reviewing those determinations *de novo* with no presumption of correctness. ***Union Carbide Corp. v. Huddleston***, 854 S.W.2d 87, 91 (Tenn. 1993).

In the instant case, the plaintiff married Mr. Emmit when she was still married to Mr. Medley. As evidence of this fact, the plaintiff proffered a letter at trial certifying that a search of certified divorce certificates from 1997 through 2002 did not establish a divorce between the plaintiff and Mr. Medley. Since the plaintiff's marriage to Mr. Medley was not annulled as she believed, her marriage to Mr. Emmit was void.

Tenn. Code Ann. § 36-3-102 (2001) unambiguously provides that "[a] second marriage cannot be contracted before the dissolution of the first." The public policy of Tennessee dictates that bigamous marriages are void. ***Taliaferro v. Rogers***, 248 S.W.2d 835, 837 (Tenn. Ct. App. 1951). Such marriages are void *ab initio* because, until the first marriage is dissolved, the parties lack the capacity to marry. ***Id.*** Consequently, such marriages are neither recognized by the courts nor capable of ratification by the parties. ***Coulter v. Hendricks***, 918 S.W.2d 424, 426-27 (Tenn. Ct. App. 1995). There is a presumption of the validity of marriage such that where there is a second marriage, it is presumed that the first marriage ended in divorce. ***Payne v. Payne***, 219 S.W. 4, 7 (Tenn. 1920). Such a presumption is strong and "is indulged whenever it is necessary to attain the ends of justice." ***Id.*** However, this presumption may be overcome by evidence that a general search of the court records of divorce produced no record of a divorce. ***Id.***

In light of the foregoing principles, we find that the marriage between the plaintiff and Mr. Emmit is void *ab initio*. The plaintiff furnished evidence that no judgment of divorce had previously been filed dissolving her marriage to Mr. Medley. Consequently, she was legally married at the time of her marriage to Mr. Emmit and, therefore, at that time, she could not contract a second valid marriage. As a court may annul a void, bigamous marriage, ***Estes v. Estes***, 250 S.W.2d 32, 34 (Tenn. 1952), we hold that an annulment was proper under the facts of the case before us.

IV.

In declining to grant an annulment to the plaintiff, the trial court relied on the doctrine of unclean hands, stating as follows:

> Counsel, I have a situation here, it looks like Mr. Medley died November the 2nd, 2000. This action got filed May the 17th, 2002. In the interim, the plaintiff remains married to another man while living with another man. And, really, I think what I've got is a question of – this Court is sitting as a Court of Equity. And the question I've got is, do Courts of Equity allow parties to choose that marriage vows are important only when they may benefit financially from those marriage vows? And I don't think Courts of Equity are going to allow that. I'm going to find that [the plaintiff] does not

> have clean hands and that she's estopped from asserting that she had a prior marriage, prior valid marriage which would give her grounds for annulment. And I'm going to decline to grant the annulment . . .

The doctrine of unclean hands provides that "[h]e who comes into Equity must come with clean hands." ***Heylandt Sales Co. v. Welding Gas Products Co.***, 175 S.W.2d 557, 561 (Tenn. 1943) (quoting *Gibson's Suits in Chancery*, § 42 (4th ed.)). The theory behind the doctrine is as follows:

> In the origin of the jurisprudence, the theory was adopted that a Court of Equity interposed only to enforce the requirements of good conscience and good reason, as to matters not equitably determinable in the Law Courts . . . it would not be exercised in favor of a person, whose conduct, in the matter he had complained of, had been unconscientious, or in bad faith; or who had violated any of those principles of Equity and righteous dealing, which the court had been constituted to enforce. *But the operation of the maxim is confined to misconduct connected with the particular matter in litigation*.

*Id.* (emphasis added).

The plaintiff argues that the trial court incorrectly applied the doctrine of unclean hands to the facts at bar. In particular, she contends that this doctrine may not be applied where the "alleged wrongful conduct . . . appears not to have injured, damaged, or prejudiced the defendant." ***Nolen v. Witherspoon***, 187 S.W.2d 14, 16 (Tenn. 1945) (citation omitted). Therefore, so the argument goes, since there was no proof of the plaintiff's misconduct relative to the issue of whether or not her marriage to Mr. Emmit is void, the doctrine is inapplicable.

We agree with the plaintiff that the doctrine of unclean hands cannot be used as a defense to annulment in this action, yet not for the reasons proffered by the plaintiff. As discussed previously, the marriage between the plaintiff and Mr. Emmit was void *ab initio* and should therefore be annulled. The trial court seems to have found the plaintiff's conduct during her marriage to Mr. Emmit and beyond to be deplorable and concluded that, because of this conduct, she should not be able to profit financially by annulling the second marriage and gaining from Mr. Medley's wrongful death action. However, the plaintiff's conduct is irrelevant to whether she is legally entitled to an annulment. The sole issue before us is whether the plaintiff is entitled to an annulment on the ground that she was not legally capable of entering into a new marriage when she married Mr. Emmit. As the evidence proffered at trial demonstrates that the plaintiff's marriage to Mr. Medley was never dissolved, we find that the petition for annulment should be granted.

The co-administrators contend that since actions to dissolve marriages are equitable proceedings, a court should be permitted to apply equitable principles in such cases. *See **Sloan v. Sloan***, 295 S.W. 62, 64 (Tenn. 1927). Therefore, so the argument goes, since the doctrine of unclean hands is an equitable maxim, and it has been applied in the context of domestic relations cases, it

is an appropriate ground for declining to award an annulment to the plaintiff.  In support of this argument, the co-administrators cite this court's opinions in *O'Brien v. O'Brien*, 734 S.W.2d 639, 643 (Tenn. Ct. App. 1987), and *McCallie v. McCallie*, 719 S.W.2d 150, 153-54 (Tenn. Ct. App. 1986), both of which involved the defense of unclean hands, but neither of which is directly relevant to our discussion of whether grounds for an annulment exist in this case.  We respectfully disagree with the co-administrators' position.

The doctrine of unclean hands enables a court to prevent a party from profiting from her own misconduct.  *Id.* at 154.  The co-administrators argue that the plaintiff's conduct – namely, marrying Mr. Emmit without documentation of her divorce, acting as if she was not married to Mr. Emmit when she was residing with Mr. Harris, and failing to express concern about the status of her marriage until the potential financial gain arose – is relevant to her attempts to annul her marriage to Mr. Emmit.  However, where the issue before us is simply whether or not the plaintiff's marriage to Mr. Emmit is void, the plaintiff's alleged misconduct has no bearing on that determination.  The plaintiff testified that she believed she was divorced, and learned only two weeks prior to Mr. Medley's death that she was, in fact, not divorced.  The fact that she was living with someone else or the timing of this petition is irrelevant to the question of whether the marriage to Mr. Emmit was void.  We hold that the doctrine of unclean hands is not a defense in this case to the plaintiff's petition for annulment and, therefore, the plaintiff's petition should be granted.

V.

The trial court's judgment denying plaintiff an annulment is reversed.  This case is remanded to the trial court for the purpose of entering an order annulling the plaintiff's marriage to Richard Emmit.  Costs on appeal are taxed to the co-administrators, Helen Medley and Omie Ray Medley.

_____
CHARLES D. SUSANO, JR., JUDGE