IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
February 29, 2012 Session

## ULYSSES DURHAM, JR. EX REL. ULYSSES DURHAM, III, A MINOR v. JOHN NOBLE, ET AL.

### Appeal from the Circuit Court for Rutherford County
No. 54877    Robert E. Corlew, III, Judge

### No. M2011-01579-COA-R3-CV - Filed July 25, 2012

This appeal arises out of a lawsuit brought by the parents of a minor child who was struck by a school bus while riding his bicycle. The matter proceeded to a bench trial, and the trial court found that the child was 58% percent at fault for the accident and that the defendants were 42% at fault; judgment was entered in favor of the defendants. Plaintiffs appeal. The trial court's finding that the child was negligent was proper, and the evidence does not preponderate against the court's allocation of fault between the parties; the judgment is affirmed in all respects.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

RICHARD H. DINKINS, J., delivered the opinion of the court, in which PATRICIA J. COTTRELL, P. J., M. S., and FRANK G. CLEMENT, JR., J., joined.

Donald N. Capparella, Amy J. Farrar, Jeffery Shane Roberts, and Jonathan Levoy Griffith, Nashville, Tennessee, for the Appellants, Ulysses Durham, III, a minor, by next friend, Ulysses Durham, Jr., and Kimberly Durham.

Richard W. Rucker, Murfreesboro, Tennessee, for the Appellee, John Noble and the City of Murfreesboro.

### OPINION

### I. Factual and Procedural History

This case arises out of a collision near the intersection of Boyd Drive and Tabitha Street in Murfreesboro, Tennessee. Boyd Drive runs in a north and south direction; Tabitha Street runs east and west and dead ends at Boyd Drive. There is a sign at the intersection of

Tabitha Street and Boyd Drive, directing Tabitha Street traffic to stop; there is no stop sign on Boyd Drive. The neighborhood where Tabitha Street and Boyd Drive are located has a posted speed limit of 30 miles per hour.

At approximately 4:08 pm, on December 11, 2006, John Noble, Jr. ("Noble") was driving a Murfreesboro City School bus when he struck eleven-year old Ulysses Durham, III ("Ulysses") who was riding a bicycle. Ulysses was transported to Vanderbilt Children's Hospital and treated for a traumatic brain injury, spleen laceration, and several broken bones. Ulysses was on life support and remained in a coma for ten days. Thereafter, Ulysses was transferred to Vanderbilt Stallworth Rehabilitation Center where he learned to walk again, with occasional reliance on a walker, prior to being released in late February. Ulysses continued to receive treatment including two more surgical procedures on his fractures. Ulysses continues to suffer from migraines headaches and a reduced ability to participate in various physical activities.

At the time of the collision, Noble was driving the bus south on Boyd Drive; the bus was traveling approximately four feet into the northbound lane on Boyd Drive. Ulysses was riding his bicycle east on Tabitha Street toward Boyd Drive. The collision occurred when Ulysses rode onto Boyd Drive as Noble was nearing the intersection.

Ulysses' parents, Ulysses Durham, Jr. and Kimberly Durham ("Plaintiffs"), individually and as next friends of Ulysses, filed suit against the City of Murfreesboro and Noble (collectively referred to as "Defendants") pursuant to Tenn. Code Ann. § 29-20-201 et seq. of the Tennessee Governmental Tort Liability Act ("GTLA"). Plaintiffs alleged that Noble while driving a vehicle owned by the City of Murfreesboro ("City"), failed to keep a proper lookout, was speeding, and was driving on the wrong side of the road, thereby causing the accident. Defendants answered, generally denying liability and asserting affirmative defenses, including negligence on the part of Ulysses; they asserted that Ulysses negligence should be compared to any negligence found on the part of Noble. The case proceeded to a non-jury trial on April 19, 2011.

On May 4, 2011, the court issued a memorandum opinion in which it determined Ulysses to be 58% negligent and Defendants 42% negligent. The court determined that Ulysses was 33% negligent for disregarding the stop sign and 25% for failure to keep a proper lookout. Of the 42% allocated to Defendants, the court determined Noble's negligence to be 40% (10% for excessive speed, 5% for not driving the bus in a single lane of travel, and 25% for failure to keep a proper lookout and failure to see Ulysses sooner) and the City at 2% for failure to have the bus' brakes properly adjusted. In light of the percentage of fault attributed to Ulysses, the court held that Defendants were entitled to judgment in their favor.

With respect to damages, the court found Ulysses' medical bills totaled $445,961.21 and that there was evidence of past and future pain and suffering, past and future loss of capacity for enjoyment of life, and permanent brain, leg, and elbow injuries. The court assessed Ulysses' damages at $1,500,000 and held that Ulysses' parents had suffered loss of consortium in the amount of $10,000 per parent. The court noted that because the claim was brought under the GTLA, recovery was capped at $250,000.

On June 15, 2011, the court entered an order holding that the immunity at Tenn. Code Ann. § 29-20-201 was removed, dismissing the cause of action against Noble in accordance with Tenn. Code Ann. § 29-30-310(b), and dismissing the action against the City pursuant to the apportionment of negligence in the May 4 memorandum.

Plaintiffs filed a timely appeal and raise the following issues for review:

1. The trial court erred in assessing 33% of the fault to Ulysses Durham, III for failure to stop at the stop sign because there was no evidence admitted at trial to show he failed to stop.

2. Even if the trial court did not err in allocating fault to Ulysses Durham, III for failure to stop at a stop sign, the trial court's allocation of 58% of the fault to an 11 year-old boy riding slowly on his bicycle was erroneous, particularly when compared with the fault of a professional bus driver who was speeding, on the wrong side of the road, and failed to keep a proper lookout.

3. The plaintiffs are entitled $600,000, the statutory maximum award, as damages in this case.

## II. Standard of Review

In a civil case heard without a jury, we review the trial court's findings of fact *de novo* upon the record accompanied by a presumption of correctness unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d). Where the trial judge has not made a specific finding of fact on a particular matter, the appellate court will review the record to determine where the preponderance of the evidence lies without employing a presumption of correctness. *Forrest Const. Co., LLC v. Laughlin*, 377 S.W.3d 211 (Tenn. Ct. App. 2009). The trial court's conclusions of law are not afforded the same presumption of correctness; rather, the appellate court reaches its own conclusions of law. *Nashville Ford Tractor, Inc. v. Great American Ins. Co.*, 194 S.W.3d 415 (Tenn. Ct. App. 2005); *Arms v. Stanton*, 43 S.W.3d 510 (Tenn. Ct. App. 2000).

**III. Discussion**

    A. Apportionment of Fault to Ulysses

    Plaintiffs contend that the trial court erred in allocating 58% of the fault for the accident to Ulysses and in finding Ulysses to be 33% at fault as a result of his failing to stop at the stop sign at the intersection of Tabitha and Boyd. The apportionment of fault is a question of fact, which the Court of Appeals reviews with a presumption of correctness. *Hocker v. State*, No. E2008-02638-COA-R3-CV, 2009 WL 3518164, at *6 (Tenn. Ct. App. Oct. 30, 2009); *Wilson v. Pickens*, 196 S.W.3d 138 (Tenn. Ct. App. 2005); *Lewis v. State,* 73 S.W.3d 88, 94–95 (Tenn. Ct. App. 2001).

    In a negligence action where a child is a plaintiff and the defense of comparative negligence is raised, the "Rule of Sevens" is used to determine the extent to which the child's negligence, if any, would reduce the child's recovery. *McGlothin v. Bristol Obstetrics, Gynecology & Family Planning, Inc.*, No. 03A01-9706-CV-00236, 1998 WL 65459, at *5 (Tenn. Ct. App. Feb. 11, 1998); *Roddy v. Volunteer Med. Clinic*, 926 S.W.2d 572, 576 (Tenn. Ct. App. 1996); *Cardwell v. Bechtol*, 724 S.W.2d 739, 749 (Tenn. 1987). The Rule of Sevens, also known as the rule of capacity, embodies three presumptions: a child under the age of seven has no capacity for negligence; there is a rebuttable presumption that a child between the ages of seven and fourteen does not have the capacity for negligence; there is a rebuttable presumption of capacity for negligence for a child between the ages of fourteen and twenty-one. *Cardwell*, 724 S.W.2d at 745.[1] Whether the minor has the capacity for negligence is determined by the trier of fact. *Id.* at 749 (holding that the application of the mature minor exception to the common law rule requiring parental consent for the medical treatment of minors "is a question of fact for the jury to determine whether the minor has the capacity to consent to and appreciate the nature, the risks, and the consequences of the medical treatment involved.").

    The trial court did not specifically find that the presumption that 11 year-old Ulysses was incapable of negligence was rebutted or state its factual findings in that regard; consistent with our standard of review, therefore, we review the record to determine where the preponderance of the evidence lies. In our review of the court's allocation of fault to Ulysses, we apply the standard set forth in *Cardwell*:

---

[1] The Legal Responsibility Act of 1971, codified at Tenn. Code Ann. § 1-3-113, lowered Tennessee's age of majority from twenty-one to eighteen; thus, for children between the ages of fourteen and eighteen, there is a rebuttable presumption of capacity for negligence. *John Doe, et al. v. Mama Taori's Premium Pizza, LLC, et al.*, No. M1998-00992-COA-R9-CV, 2001 WL 327906, at *5 (Tenn. Apr. 15, 2001).

Whether a minor has the capacity to [be negligent] depends on the age, ability, experience, education, training, and degree of maturity or judgment obtained by the minor, as well as upon the conduct and demeanor of the minor at the time of the incident involved. Moreover, the totality of the circumstances, the [minor's conduct at issue] and its risks or probable consequences, and the minor's ability to appreciate the risks and consequences are to be considered. Guided by the presumptions in the Rule of Sevens, these are questions of fact for the jury to decide.

*Id.* at 748.

Ulysses was eleven years old and in the fifth grade when the accident occurred. His parents, Ulysses Durham, Jr. and Kimberly Durham, testified that prior to the accident Ulysses was a "deep thinker" and a good student who made "As and Bs." Mrs. Durham testified that the Plaintiffs had lived on Tabitha Street for one and-a-half to two years and that Ulysses had previously ridden around the streets of the neighborhood by himself or with others. She testified further that Ulysses was familiar with the stop sign located at the intersection of Tabitha Street and Boyd Drive, that he had been taught to stop and look both ways before crossing the street, and that his habit was to stop at the stop sign when riding a bicycle. Moreover, Mrs. Durham testified that she reminded Ulysses on the day of the accident to "watch out where he was going" and to "make sure he looked both ways" when crossing the street.

Testimony of witnesses related to the circumstances of the accident provided evidence of Ulysses' conduct at the time of the accident. A neighbor, Zhoante Taylor ("Ms. Taylor"), testified that she was standing on the top step behind her home with an unobstructed view of the intersection at Tabitha Street and Boyd Drive. She testified that she witnessed Ulysses and Tylon "T.J." York ("T.J.") riding bicycles and talking to each other as they rode toward the intersection, that she did not see either boy stop at the stop sign before entering Boyd Drive, and that she did not know if the boys noticed the bus approaching the intersection.

T.J. testified that Ulysses was riding the bicycle with one hand while racing a girl named Angelica and that his speed on the bicycle was consistent. T.J. testified that he was riding ahead of Ulysses and was the first to enter Boyd Drive; that he called out to warn Ulysses of the bus, but Ulysses was turned away and did not immediately respond; and that Ulysses did not see the bus until right before he was struck.

The evidence recounted above shows that Ulysses was knowledgeable in the operation of a bicycle, was familiar with the rules of the road, that he should stop at stop signs, and that he knew to look both ways before crossing the street. The evidence also shows that he was

familiar with the neighborhood, that he had a level of understanding commensurate with his age to understand the dangers associated with riding a bicycle, and that he had been cautioned immediately before the accident to stop at the stop sign. The evidence rebuts the presumption that Ulysses was not capable of negligence at the time of the accident; consequently, the trial court did not err in apportioning fault to Ulysses.

Having determined that Ulysses had the capacity for negligence, we address the court's allocation of fault to him for failing to stop at the stop sign and failing to keep a proper lookout.

### B. Apportionment of Fault Between the Parties

"A claim of negligence requires proof of the following elements: (1) a duty of care owed by defendant to plaintiff; (2) conduct below the applicable standard of care that amounts to a breach of that duty; (3) an injury or loss; (4) cause in fact; and (5) proximate, or legal, cause." *McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn. 1995). Duty is the legal obligation owed to conform to a reasonable person standard of care for the protection against unreasonable risks of harm. *Id.* In considering Ulysses' negligence, we focus on the duty imposed on him and the evidence showing a breach of that duty.

A duty to exercise reasonable care under the circumstances always exists. *Doe v. Linder Construction Co.*, 845 S.W.2d 173, 177 (Tenn. 1992). In addition, Tenn. Code Ann. § 55-8-172 provides that persons riding bicycles on roadways are subject to "all of the duties applicable to the driver of a vehicle." Tenn. Code Ann. § 55-8-149(c) requires drivers to stop at posted stop signs. Tenn. Code Ann. § 55-8-136(b) requires all drivers to exercise due care by operating the vehicle at a safe speed, keeping a safe lookout, keeping the vehicle under proper control, and by devoting full time and attention to operating the vehicle.

There was no evidence that Ulysses stopped; to the contrary, Ms. Taylor and T.J. testified that they did not see Ulysses stop at the stop sign. The testimony of T.J. shows that Ulysses did not devote his attention to operating the bicycle and supports the court's holding that Ulysses did not maintain a safe lookout. Ulysses' failure to stop at the stop sign and to maintain a proper lookout were breaches of his duty to use reasonable care under the circumstances. There is no dispute that Ulysses' failure to stop at the stop sign was a cause in fact of the accident.

The evidence does not preponderate against the trial court's holding that Ulysses was negligent in failing to stop at the stop sign and to keep a proper lookout.

We next consider the percentages of fault attributed by the trial court to Ulysses as well as the percentages attributed to Defendants. As noted previously, the court allocated

responsibility as follows: 58% to Ulysses – 33% for his negligence in disregarding the stop sign and 25% for failing to keep a proper lookout; 40% to Noble – 10% for excessive speed, 5% for not driving the bus in a single lane of travel, and 25% for failing to keep a proper lookout and to see Ulysses sooner; and 2% to the City for failing to have the bus' brakes properly adjusted.

Steve Binkley ("Binkley"), Plaintiffs' expert witness, testified that the posted speed limit was 30 miles per hour and that Noble's average speed from the curve on Boyd Drive until the bus came to a stop, was 31 miles per hour. Conversely, Leighton Sissom ("Sissom"), Defendant's expert witness, testified that Noble's average speed over the same distance was 29 miles per hour and that at the time of impact the bus was traveling 18.2 miles per hour. Noble also testified that he was traveling between 25 to 30 miles per hour on Boyd Drive. The court held that Noble was traveling in excess of the posted speed limit, but that his speed "was extremely insignificant" and "evidence shows that the accident would have occurred . . . at a slower speed."

The finding that the bus was being driven above the speed limit supports the court's holding that Noble was negligent. Plaintiffs have not shown that the evidence supports a percentage of negligence higher than that the court assigned. Affording the court the presumption of correctness, we affirm the allocation of 10% of fault to Noble for excessive speed.

With respect to the court's allocation of 5% of fault for failing to keep the bus in the proper lane of travel, Binkley testified that Boyd Drive is 35 feet wide and that after the impact the left edge of the bus rested 21 and ½ feet from the right curb of the roadway and was 4 to 4 and ½ feet into the northbound lane of traffic. He further testified that had the bus been 5 feet further to the right, the accident would have been avoided. Sissom testified that if the bus had been 2-3 feet to the right then the impact would have occurred at the location of the bus' outside mirror rather than the front of the bus and that, if the bus had been 5 feet further to the right, it "could have been possible" to avoid the accident.

The evidence does not show that the accident would not have occurred if the bus had been entirely in the southbound lane of Boyd Drive. Neither does it show that a higher percentage of negligence should be attributed to Noble in this regard. Again affording the court the presumption of correctness, the evidence does not preponderate against the court's allocation of 5% of fault in this regard.

The Plaintiffs also contend that the court effectively compared the negligence of an 11 year-old with that of an adult driver when it allocated 25% of fault to each of them for failing to keep a proper lookout; we do not agree with this characterization of the court's

action. Ulysses was riding a bicycle and the duty attendant thereto was unique to him; similarly, the duties required of Noble were unique. The evidence that Ulysses did not keep a proper lookout has been explained previously. Noble testified that he used the appropriate scanning techniques to watch for children playing near the road, but he did not see Ulysses until it was too late to avoid the collision. The court's allocation of fault to Ulysses and Noble for this element is supported by the evidence.

In light of our affirmance of the allocation of 58% of fault to Ulysses and 40% to Noble, any issue regarding the allocation of 2% fault to the City of Murfreesboro is moot. For the same reason, Plaintiff's issue relative to the monetary limits of the Tennessee Governmental Tort Liability Act is moot.

## IV. Conclusion

For the foregoing reasons, the judgment of the Circuit Court for Rutherford County is AFFIRMED.


_____
RICHARD H. DINKINS, JUDGE