ESTES v. ESTES.

*(Jackson,* April Term, 1952.)

Opinion filed June 7, 1952.

GRAHAM MOORE, of Memphis, for appellant.

POSTON Cox, Divorce Proctor, and WALTER CHANDLER, both of Memphis, for appellee.

MR. CHIEF JUSTICE NEIL delivered the opinion of the Court.

The complainant filed her original bill in the Shelby County Chancery Court seeking a decree for the annulment of her ceremonial marriage to the defendant, alleging: (1) that she is a citizen and resident of Shelby County, Tennessee; and that defendant was a citizen and resident of Shelby County for some time prior to December 22, 1950; (2) "That complainant and defendant

were intermarried at Hernando, Mississippi, on December 3, 1950, and returned to Memphis where they lived as husband and wife at 567 Lucy Avenue, Memphis, until December 22, 1950; that at the time complainant was married to the defendant, she understood that he was an unmarried man, but on or about December 22, 1950, she learned that he had previously been married to Grace Parmely and that there had been no divorce of the defendant and Grace Parmely Estes; that as soon as complainant learned that the defendant was married to another woman she refused to live with him any longer and she has not lived with the defendant since December 22, 1950''; and (3) ''That by reason of the former marriage of the defendant with another woman, the marriage between complainant and the defendant was void and she is entitled to have her marriage to defendant set aside, annulled and held void.''

The defendant was personally served with process but failed to answer the bill. The Divorce Proctor intervened with a formal answer, neither admitting nor denying the truth of the allegations made in the bill. A decree pro confesso was duly entered, and the cause proceeded with ex parte. The Chancellor denied the relief sought on the ground that the complainant had not been a resident of Shelby County for two (2) years next preceding the filing of the bill, as required by Code Section 8428. An appeal was prayed and granted to the Court of Appeals and that court in an able and exhaustive opinion by ANDERSON, P. J., reversed the lower court and entered a decree annulling the marriage.

We granted certiorari because of the importance of the question involved. Oral argument was heard at Jackson as required by the statute. Both the Chancellor and the Court of Appeals concurred in finding that there was

material evidence to support every allegation made in the complainant's bill.

The complainant contends that the requirements of Section 8428 apply to divorce actions only; that it has no application to a suit in chancery to annul a void marriage; that a court of equity has inherent jurisdiction to annul and declare void a contract of marriage and that the jurisdiction is not dependent upon residence for any specified time. The Divorce Proctor in his argument, and on his brief, contends that the court has no inherent authority to enter such a decree, especially where the ground for annulment is also covered by the divorce statute.

Pretermitting the several grounds for divorce in this State as set forth in the Code Section 8426(2), one of which is: "That either party has knowingly entered into a second marriage, in violation of a previous marriage, still subsisting."

Code Section 8428 reads as follows: "A divorce may be granted for any of the aforesaid causes, though the acts complained of were committed out of the state, or the petitioner resided out of the state at the time, no matter where the other party resides, if the petitioner has resided in this state two years next preceding the filing of the bill or petition."

Code Section 8443 is as follows: "If, upon hearing the cause, the court is satisfied that the complainant is entitled to relief, it may be granted either by pronouncing the marriage void from the beginning, or by dissolving it forever and freeing each party from the obligations thereof, or by a separation for a limited time (1799, Ch. 19, Sec. 5; 1835-36, Ch 26, Secs. 7, 19)."

It thus appears from an examination of the statutes that the Chancellor may, within his sound dis-

cretion, declare the marriage void ab initio or enter a decree of divorcement depending upon the facts developed on the trial of the cause. Where such suit is primarily one for divorce and annulment is alternative to divorce and rests within the court's discretion for good and sufficient reasons, the Code Section 8428 requiring two (2) years residence before filing the suit would no doubt be applicable. But we are here confronted with the inherent jurisdiction of the court to annul a void marriage, and without regard to any statutory requirements as to the residence of the complainant. The sole question at issue is does the Chancery Court have inherent jurisdiction to declare void that which is admittedly void, both in law and in fact. While there is respectable authority to support the Chancellor, we think the opinion of the Court of Appeals is not only supported by the weight of authority but is also in keeping with sound public policy.

In giving consideration to the statutory requirement of two (2) years residence in this State before bringing a divorce action the Court of Appeals made the following timely observation:

"The two-years residence requirement was designed to discourage hasty divorces and a resort to this state by non-residents having no intention of becoming domiciled here but coming only for the purpose of using our courts to get relief which they could not get at their place of domicile. The statute is in aid of the public policy which is concerned with the maintenance of the marriage relation. To this end a waiting period is appropriate because the law always envisages the possibility of a reconciliation.

"But this policy presupposes a valid marriage. Public policy can have no concern in perpetuating

an ostensible marriage which is void ab initio and as a result of which the parties by a public record appear to be married, whereas as a fact they are not married at all but living in adultery. Cf. *Scurlock* v. *Scurlock*, 92 Tenn. 629, 22 S. W. 858; *McKee* v. *Bevins*, 138 Tenn. 249, 197 S. W. 563; *Moore* v. *Moore*, 102 Tenn. 148, 52 S. W. 778. Upon the contrary, the state is interested always in removing any uncertainty as to the marital status of its citizens. See 2, Kent's Commentaries 76; *Hamm* v. *Hamm*, 30 Tenn. App. 122, 142 et seq., 204 S. W. (2d) 113, 175 A. L. R. 523.

"In short, we find it impossible to attribute an intention to the legislature that a citizen of this state who has innocently entered into an ostensible marriage with another who is a party to a subsisting marriage, whether here or elsewhere, should continue to live in a state of adultery for a period of two years before he or she could resort to our courts for the purpose of having the cloud on their status removed."

Coming now to the question as to the inherent jurisdiction of the Chancery Court to annul a void marriage, we pretermit any discussion of the Divorce Proctor's insistence that until the Divorce Act of 1857 matrimonial causes were cognizable only in ecclesiastical courts of that country and that the English courts (Courts of Chancery) would not entertain jurisdiction even for the purpose of annulling void or voidable marriages. While some authorities support this view we think it would be unwise to follow them because they make a fetish of a technicality. Moreover the fact that the High Court of Chancery refused to take jurisdiction of causes over which the Ecclesiastical Court of England claimed ex-

clusive authority is not recognized as persuasive authority in this State.

Among the numerous cases from foreign jurisdictions supporting the complainant's contention (cited in the Court of Appeals' opinion) are the following: *"McLurg v. Terry,* 21 N. J. Eq. 225; *Crouch v. Wartenburg,* 86 W. Va. 664, 104 S. E. 117, 11 A. L. R. 212; *Wiley v. Wiley,* 75 Ind. App. 456, 123 N. E. 252, 257; *Taylor v. Taylor,* 249 Ala. 419, 31 So. (2d) 579; *Ridgely v. Ridgely,* 79 Md. 298, 29 A. 597, 25 L. R. A. 800; *Avakian v. Avakian,* 69 N. J. Eq. 89, 60 A. 521; *Browning v. Browning,* 89 Kan. 98, 130 P. 852, L. R. A. 1916C, 737; Ann. Cas. 1914C, 1288; *Ferlat v. Gojon,* 1 Hopk. Ch., N. Y., 478, 14 Am. Dec. 554; *Pretlow v. Pretlow,* 177 Va. 524, 14 S. E. (2d) 381. In the last mentioned cases, numerous authorities are cited."

The Court of Appeals' opinion is also supported by the following additional authorities. In *Cannon v. Cannon,* 7 Tenn. App. 19, 23, it is said:

"A court of chancery, by virtue of its ordinary equity powers, possesses jurisdiction to entertain a suit for the purpose of annulling a marriage supposed to be void, or as to the validity of which some doubt may exist. 10 R. C. L., 341."

"The general rule is that in the absence of contrary statutory provision, it is not essential to the jurisdiction of the court that the parties to an annulment suit shall have had a legal domicil or residence within the limits of the state for any specified length of time." 35 Am. Jur., "Marriage", Sec. 63, page 223.

See also Section 60 wherein it is said, "In the absence of statute, the general rule is that courts of equity *have*

*inherent jurisdiction of such suits"*. (Emphasis supplied.)

In Cohen on Divorce and Alimony in Tennessee, at page 24, Section 10, it is said:

"Equity, prior to any statutes, had inherent power to annul voidable marriages. And under the well recognized doctrine that equity never loses any of its original powers unless they are specifically taken away by statute, the statutory provisions in the Virginias which give the equity courts jurisdiction to annul certain voidable marriages have not had the effect of limiting, in any way, the original equity powers of annulment. Similarly, the power of equity courts to pronounce prohibited marriages void existed prior to the statutes, and nothing was taken from that power by the legislative enactments."

In *Antoine* v. *Antoine,* 132 Miss. 442, 96 So. 305, the court refused to take jurisdiction of a suit for annulment where the parties were domiciled in the State of Alabama on the ground that the courts of Mississippi "must not only have jurisdiction of the person or persons, but must also have jurisdiction of the marriage status, and that the jurisdiction over a status created by the marriage in Mississippi of residents of Alabama was at the domicil of the parties". 128 A. L. R., p. 77. We are not prepared to follow the reasoning in this case since the "marriage status" in the case at bar would have to be declared by the courts in any and all jurisdictions as not only illegal but one of gross immorality. So that regardless of the place of domicil or residence of the parties at the time of the marriage no court would refuse to give full faith and credit to the decree of annulment. But conceding that the Chancery Courts of this State must have jurisdiction of the "marriage status", no

reason is given, and we can conceive of none, for the court to refuse to take jurisdiction to correct an *immoral status* as a means of promoting public decency and Christian morality, the complainant being wholly innocent of any wrong herself.

"In such cases, the interest of society intervenes, and the state is regarded as a third party. * * * The question appears to be largely as to whether the marriage, in the particular jurisdiction, is regarded as contrary to the public policy of the state, *so as to justify the intervention of the court on behalf of society.*" (Emphasis supplied.) Vol. 2, Pomeroy's Equity Jurisprudence, Sec. 402e, pp. 132, 134, Annotations in 54 A. L. R. 75, 32 A. L. R. 1088.

The Court of Appeals' opinion is in all things affirmed.