IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
October 12, 2000 Session

## JAMES VERTNER ARMS v. RICHARD D. STANTON, individually and d/b/a Shiloh Family, Ltd.

Appeal from the Chancery Court for Montgomery County
No. 98-12-0102     Carol A. Catalano, Chancellor

No. M2000-00811-COA-R3-CV - Filed December 21, 2000

In what started out as an order of protection proceeding but later turned into a "divorce" action,[1] the original plaintiff, James Vertner Arms, who was the counter-defendant in the "divorce" case, filed a third-party action against Richard D. Stanton, individually and doing business as Shiloh Family, Ltd. ("Stanton"). Stanton had purchased a tract of real property from the counter-plaintiff, Tammy Lou Arms, subsequent to the institution of her "divorce" action against Mr. Arms. The trial court determined that Mr. Arms and Tammy Lou Arms were not validly married; it proceeded to set aside the transfer as a fraudulent conveyance and awarded Stanton a judgment against Tammy Lou Arms for $50,000. Stanton appeals, arguing that the trial court erred in setting aside the conveyance. We reverse.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, J., and D. MICHAEL SWINEY, J., joined.

Gregory D. Smith, Clarksville, Tennessee, for the appellant, Richard D. Stanton, individually and d/b/a Shiloh Family, Ltd.

Timothy K. Barnes, Clarksville, Tennessee, for the appellee, James Vertner Arms.

**OPINION**

I.

On March 1, 1986, Mr. Arms married Gerreldean McCord in Springfield, Tennessee. They never divorced. Four months later, on July 25, 1986, Mr. Arms "married" Tammy Lou Arms in

---

[1]Following the parties' example, we have limited the style of this case to that of the third-party action.

Greeneville, South Carolina. After their "marriage," Mr. Arms and Tammy Lou Arms moved to Tennessee and purchased the property at issue in this case, consisting of a house and approximately 27 acres of land. The property is surrounded on three sides by approximately 440 acres owned by the defendant Stanton. On February 28, 1997, Mr. Arms ostensibly conveyed by quitclaim deed all of his interest in the property to Tammy Lou Arms. The deed states that the conveyance "is a non-taxable dissolution of [a] tenancy by the entirety."

In January, 1999, Tammy Lou Arms filed a counterclaim for divorce in the order of protection proceeding initiated by Mr. Arms. Two months later, she contacted Stanton and offered to sell him the subject property for $50,000. Stanton agreed and signed a purchase contract on March 29, 1999. Before the deed was executed, however, on April 2, 1999, Mr. Arms' attorney filed a notice of lien *lis pendens* in the office of the Montgomery County Register of Deeds. The deed conveying the property to Stanton was executed by Tammy Lou Arms on April 5, 1999, and was recorded four days later. After Mr. Arms learned that the property had been sold, he instituted this third-party action against Stanton, claiming a marital interest in the property and seeking 50% of the fair market value of the property or, in the alternative, permission to purchase the 50% interest in the property that Mr. Arms alleged Stanton had acquired by the deed from Tammy Lou Arms.

At the trial on Mr. Arms' third-party complaint, Mr. Arms testified that, on several occasions, Stanton had told him that he, Mr. Arms, should sell the property to Stanton. Mr. Arms recalled that the last of these conversations occurred approximately two weeks prior to the transaction between Stanton and Tammy Lou Arms. Stanton denied that any of these conversations took place. Mr. Arms further testified that he had informed Stanton that Tammy Lou Arms had moved out of the parties' residence on the day she left, which was sometime in early January, 1999.

Mr. Arms also testified as to why he had conveyed all of his interest in the property to Tammy Lou Arms. He stated that after he had suffered a heart attack, Tammy Lou Arms had expressed her concern that if Mr. Arms died, she would "lose the place and that if it went into probate court that probate court would end up getting it all." Mr. Arms also testified that Tammy Lou Arms threatened to leave him if he did not convey his interest to her. On cross-examination, he admitted that he knew that by executing the deed he was conveying the entire property to Tammy Lou Arms.

Mr. Arms testified that he thought his first marriage to Ms. McCord had been annulled two weeks after their March 1, 1986, wedding; however, no records were produced evidencing such an annulment. On the other hand, Ms. McCord testified that, to her knowledge, her marriage to Mr. Arms had never been annulled nor were they ever divorced.

Stanton testified that Tammy Lou Arms contacted him in March, 1999, about buying the property.[2] He testified that she told him that she was in the process of getting a divorce and that she owned the property. Stanton contacted her attorney at the time, who advised him that she had the

_____

[2]Tammy Lou Arms did not testify below. Apparently, her whereabouts at the time of trial were unknown.

full right to convey the property. Although the attorney for Mr. Arms – the one who had filed the notice of lien *lis pendens* – testified that he notified Stanton of the filing on April 2, 1999, Stanton denied any such notification and testified that he was not aware of the filing until approximately a week later, when he discovered it while checking the tax records on the property at the courthouse.

Following a bench trial, the court below held that the conveyance from Tammy Lou Arms to Stanton was a fraudulent conveyance. The court found that over the years, Stanton had several conversations with Mr. Arms because Stanton desired to buy the property. It further found that Stanton knew, prior to Tammy Lou Arms contacting him in March, 1999, that Mr. Arms did not wish to sell the property. The trial court found that Stanton knew that Mr. Arms and Tammy Lou Arms were in the process of obtaining a divorce at the time he purchased the property. Based upon the facts known by Stanton at the time of the subject transaction, the court concluded that the fact the contract was signed before the notice of the lien *lis pendens* was filed was not sufficient to validate Stanton's purchase of the property from Tammy Lou Arms. The court noted that although this conveyance was a fraud perpetrated by Tammy Lou Arms, the fraud was ultimately accomplished because Stanton "chose to ignore what he knew and what he was being told." The court therefore held that the conveyance should be set aside.

Significantly, the trial court found that Mr. Arms had a prior, subsisting marriage to Ms. McCord at the time he married Tammy Lou Arms. It concluded, however, that "it is still within the discretion of the Court what should be done with the property that two people acquire during what they thought was a marriage." Exercising that discretion, the trial court concluded that it would not be equitable to hold that Tammy Lou Arms received title to the property as a single person. Therefore, it held that Mr. Arms and Tammy Lou Arms own the property "as husband and wife or as an undivided one half interest as tenants in common." It set aside the conveyance from Tammy Lou Arms to Stanton as a fraudulent conveyance and awarded Stanton a judgment for $50,000 against Tammy Lou Arms. This appeal followed.

II.

Our review of this non-jury case is *de novo* upon the record of the proceedings below; however, that record comes to us with a presumption that the trial court's factual findings are correct. Tenn. R. App. P. 13(d). We must honor that presumption unless we find that the evidence preponderates against the trial court's findings. **Union Carbide Corp. v. Huddleston,** 854 S.W.2d 87, 91 (Tenn. 1993). The trial court's conclusions of law, however, are not afforded the same deference. **Campbell v. Florida Steel Corp.,** 919 S.W.2d 26, 35 (Tenn. 1996).

III.

Mr. Arms argues that the issue of his prior subsisting marriage is not relevant to this case. He contends that the trial court properly relied upon the Supreme Court's decision in **Estes v. Estes,** 194 Tenn. 96, 250 S.W.2d 32 (1952), in finding that it had the discretion to determine "what should be done" with the property, even though Mr. Arms and Tammy Lou Arms were parties to an invalid

marriage. We do not find *Estes* to stand for such a proposition. In *Estes,* the Supreme Court held that, where the facts established that the marriage was in violation of a prior subsisting marriage, a trial court has the discretion to declare the second marriage void *ab initio* or to enter a decree of divorce. 194 Tenn. at 99-100; 250 S.W.2d at 33. The *Estes* Court did not address the issue of the division of property acquired during an invalid marriage. It certainly did not discuss the effect of a quitclaim deed between the parties during the period of time that they were living together.

Mr. Arms argues that, despite the conveyance of his interest[3] by quitclaim deed to Tammy Lou Arms, he nevertheless retained an interest in the property. He cites this Court's decision in *Hand v. Hand,* C/A No. 01A01-9607-CH-00325, 1997 WL 187310 (Tenn. Ct. App. W.S., filed April 18, 1997), in which this Court refused to recognize a quitclaim deed executed by a husband in favor of a wife. This Court held in *Hand* that, despite the husband's conveyance, the property remained marital property, noting that for the purpose of dividing marital property in a divorce action, "the status of property depends not on the state of its record title, but on the conduct of the parties." *Id.* at *3 (quoting *Cohen v. Cohen,* 937 S.W.2d 823, 833 n.12 (Tenn. 1996)) (internal quotation marks omitted).

We find the *Hand* case to be distinguishable from the instant case. In *Hand,* the parties were legally married; thus, the issue at trial was the division of the *marital* property acquired during their marriage. In the instant case, however, Mr. Arms and Tammy Lou Arms were not legally married; without a valid marriage, we cannot consider the property in question to be *marital* property. We therefore hold that on the facts of this case, Mr. Arms cannot claim any "marital" interest in the property. *Cf. Pewitt v. Pewitt,* 192 Tenn. 227, 239, 240 S.W.2d 521, 526 (1951) (holding that a party to an invalid marriage is not obligated to pay alimony to the other party because the right to alimony arises only out of a marital relationship).

In sum, we conclude that upon Mr. Arms' execution of the quitclaim deed to Tammy Lou Arms, the property was vested solely in her. The principles pertaining to fraudulent conveyances are simply not implicated by the facts of this case. Mr. Arms voluntarily conveyed his interest in this property to his co-tenant in common. This being the case, she had the full right to dispose of the property as she saw fit, in her sole and absolute discretion. Accordingly, we find that the trial court erred in setting aside the conveyance to Stanton.

---

[3]In 1997, Mr. Arms conveyed his interest in the property to Tammy Lou Arms, with the stated purpose of dissolving a "tenancy by the entirety." Because the subject parties were not married at the time they purchased the property in question, they did not take the property as tenants by the entireties but rather as tenants in common. *See McKee v. Bevins,* 138 Tenn. 249, 251-52, 197 S.W. 563, 563-64 (1917). Thus, Mr. Arms conveyed in the quitclaim deed his one-half undivided interest as a tenant in common.

IV.

The judgment of the trial court is reversed. This case is remanded for the entry of an appropriate order, consistent with this opinion, and for the collection of costs assessed below, all pursuant to applicable law. Costs on appeal are taxed to the appellee.

_____
CHARLES D. SUSANO, JR., JUDGE