IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
September 17, 2019 Session

## FREIDA LOUISE CLIMER v. STEPHEN FRANKLIN CLIMER

**Appeal from the Chancery Court for Madison County**
**No. 74396     James F. Butler, Chancellor**

_____

### No. W2018-01910-COA-R3-CV
_____

This is a divorce action. Husband appeals the trial court's division of marital property and award of alimony to Wife. Discerning no error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

CARMA DENNIS MCGEE, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and W. NEAL MCBRAYER, J., joined.

Jennifer King, Jackson, Tennessee, for the appellant, Stephen Franklin Climer.

Harold F. Johnson, Jackson, Tennessee, and Thomas F. Bloom, Nashville, Tennessee, for the appellee, Freida Louise Climer.

## OPINION

### I.  PROCEDURAL HISTORY

This appeal arises from a divorce action following a 34-year marriage. Freida Louise Climer ("Wife") and Stephen Franklin Climer ("Husband") were married in 1983. It was Wife's first marriage and Husband's second. Three children were born of the marriage, all of whom were adults when this action was commenced. On May 18, 2016, Wife filed a complaint for divorce in the Chancery Court for Madison County. In her complaint, Wife alleged adultery and inappropriate marital conduct. She asked the court to value and divide the parties' marital and separate assets and award her alimony, attorney's fees, and costs. Husband answered admitting to adultery and inappropriate marital conduct, but also asserted a number of affirmative defenses and requested that the complaint be dismissed. In his counter-complaint, Husband prayed for a divorce on the grounds of irreconcilable differences and inappropriate marital conduct.

The trial court heard the matter over four separate days from May through December of 2017. By order entered on October 17, 2018, the trial court awarded Wife a divorce on the grounds of adultery and inappropriate marital conduct. The trial court categorized and divided the parties' property and awarded Wife alimony *in futuro* in the amount of $1,500 per month. The trial court awarded Wife her attorney's fees and costs, dismissed unresolved matters as abandoned, and incorporated by reference its August 15, 2018, letter ruling into its judgment.

Husband filed a motion to alter or amend the judgment claiming that the trial court erred in classifying property located on Gum Flat Road in Crockett County as marital property. Wife also filed two motions to alter or amend and for additional facts. Wife asserted in her first motion that the trial court erred in its "assumption" with respect to a $150,000 line of credit with Bank of Crockett. She requested that the court reopen the matter for proof of the amount of the indebtedness, and further claimed Husband had referenced instruments not in the record in his motion to amend. In her second motion, Wife alleged a change of circumstances since the hearing of the matter and requested an increase in alimony. Husband responded, claiming that he had testified with respect to the indebtedness to Bank of Crockett and agreed that the proof should be reopened to establish the amount of indebtedness. In his response to Wife's second motion to alter or amend, Husband stated that the trial court had erred in its determination of his earning capacity and denied that Wife needed any increase in alimony.

Following a hearing in December 2018, the trial court denied Wife's motions. The trial court determined that it had incorrectly stated that a two-thirds interest in the property located on Gum Flat Road in Crockett County was marital property. It amended its ruling to classify a one-half interest in the property as marital property. The trial court denied Husband's request to further modify the division of real property, finding that the division was equitable under the circumstances. It accordingly partially granted Husband's motion to alter or amend. This appeal ensued.

## II. ISSUES PRESENTED

Husband presents the following issues for our review:

I. Whether the trial court erred in classifying a 1/2 interest in the 111.2482 acres at Gum Flat Road, Crockett County, Tennessee, as marital property?

II. As a result of the trial court's inclusion of a 1/2 interest in the 111.2482 acres at Gum Flat Road, did the Court err in making an equitable division of the marital estate?

III. Whether the trial court erred in finding that Husband's separate property included Frank Climer and Son's Paving Company, Inc. stock, Ruleman's Sand and Gravel stock, and Frank Climer and Son's Asphalt materials stock and equipment?

IV. Did the Court's classification of Frank Climer and Son's Paving Company stock, Ruleman's Sand and Gravel, Inc. stock, and Frank Climer and Son's Asphalt Materials, Inc. stock and equipment as Stephen Climer's separate property impact the division of the marital estate?

V. Whether the trial court erred in awarding alimony *in futuro* to Wife in the amount of $1,500.00 per month?

VI. Whether the trial court erred in finding that Husband's minimum earning capacity was $60,000 per year based upon the evidence presented at trial?

VII. Whether the trial court erred in using the real estate appraisals of Jack Brummett to determine the potential income of Husband?

VIII. Whether potential unrealized income of a party should be used in determining a party's ability to pay alimony when there is no finding of underemployment?

IX. Whether the trial court erred in finding that Husband was the sole owner of the Frank Climer and Sons Paving Company, Inc. and Ruleman's Sand and Gravel, Inc. in its determination of Husband's income for the calculation of alimony?

Wife prays for attorney's fees and costs on appeal and raises one additional issue for review:

Whether the chancellor abused his discretion in dividing the marital property in kind rather than requiring the sale of the property, with costs of sale shared, and proceeds distributed equally.

### III. DISCUSSION

We begin our discussion of the issues presented for review by observing that the record contains over 90 exhibits relating to the parties' interest in and valuation of several tracts of improved and unimproved real property and multiple business interests. We also observe that the trial court heard the matter over four days, heard two witnesses in

addition to the parties, made detailed findings of fact, and incorporated a highly detailed letter ruling into its October 2018 order. In its ruling, the trial court specifically noted that it had observed the credibility of the parties and witnesses when reaching its conclusions. Finally, the trial court reviewed its classification and division of the parties' property upon the parties' motions to alter or amend, reviewed the equity of the division of property, and amended its judgment accordingly. With these observations in mind, we turn first to the parties' issues with respect to the trial court's classification and division of property.

## A. CLASSIFICATION AND DIVISION OF PROPERTY

Husband argues that the trial court erred by classifying a one-half interest in property located at Gum Flat Road in Crockett County, Tennessee ("the Gum Flat property") as marital property. He additionally contends that the inclusion of this one-half interest impacted the value of the marital estate so as to result in an inequitable division of marital property. Husband also asserts that the trial court erred in including several inherited businesses in the list of his separate property, and questions whether that inclusion impacted the division of the marital estate.

When dividing a marital estate, the trial court must first classify the parties' property as either separate property or marital property. *Snodgrass v. Snodgrass*, 295 S.W.3d 240, 246 (Tenn. 2009) (citation omitted). The classification of a particular property is a question of fact which the trial court must determine in light of all the circumstances. *Id.* at 245. The appellate court "gives great weight to a trial court's decisions regarding the division of marital assets, and we will not disturb the trial court's ruling unless the distribution lacks proper evidentiary support, misapplies statutory requirements or procedures, or results in some error of law." *Id.* We review the trial court's factual findings *de novo*, with a presumption of correctness unless the evidence preponderates otherwise. *Id.* No presumption of correctness attaches to the trial court's conclusions of law, however. *Id.* at 246.

The trial court classified certain items of personal property and the following real property and business interests as Husband's separate property:

1. seven acres in Mississippi
2. real property at Norris Crossing Road in Bells, Tennessee
3. real property and a home in Alamo, Tennessee
4. a one-third interest in a two-acre tract in Haywood County, Tennessee
5. one-half interest in 111.2482 acres at Gum Flat Road in Crockett County, Tennessee
6. one-half interest in 17 acres on Climer Lane in Bells, Tennessee
7. Frank Climer and Sons Paving Company stock
8. Ruleman's Sand and Gravel stock

9. Frank Climer and Sons Asphalt Materials stock and equipment

### 1. *The Gum Flat Property*

The real property in dispute here is the remaining one-half interest in the Gum Flat property. Husband asserts that Wife transferred her interest in the Gum Flat property to him by quitclaim deed executed in October 2011. Wife, on the other hand, admits to signing the quitclaim deed presented to her by Husband in 2011, but claims she was unaware that she was "signing away" her interest in the property. The trial court determined that the deed was fatally flawed because it was not supported by consideration and because it was not properly notarized. We accordingly analyze whether the trial court erred by determining that the quitclaim deed purporting to convey Wife's one-half interest in the Gum Flat property was ineffective with respect to the classification of property.

In this case, it is undisputed that, in April 2004, various family conveyances resulted in Husband and Wife owning a one-half interest in the Gum Flat property. Frank and Mary Lou Climer, Husband's father and stepmother, owned the remaining one-half interest. In October 2011, Frank and Mary Lou Climer executed a deed conveying their one-half interest to Husband. The trial court determined that this one-half interest was Husband's separate property. It also is undisputed that, in October 2011, Husband presented the same quitclaim deed to Wife while she was preparing dinner and asked her to sign it. Wife signed the deed. The deed was not signed before a notary, and only Husband observed Wife's signature. It is undisputed that Husband's secretary/current paramour "notarized" the deed after the fact and without Wife's knowledge or consent. Husband recorded the deed in the Crockett County Register's Office.

The trial court found that the quitclaim deed was "fatally flawed to the extent it purports to convey Wife's interest in the property to Husband." The trial court also found that the conveyance was not supported by consideration, and that, even if the deed could "withstand legal scrutiny as to the notary," Husband "acquired Wife's interest during the marriage." The trial court initially determined that a two-thirds interest in the Gum Flat property was marital property. The trial court reviewed the matter upon Husband's motion to alter or amend and corrected the judgment to classify a one-half interest in the property as marital property. The trial court did not order the deed set aside and awarded the property to Husband. We observe that the trial court deducted the debt owed on the property from its valuation for the purposes of an equitable division of marital property.

Husband does not dispute the trial court's finding that the deed was not properly acknowledged. In his brief to this Court, Husband asserts that Wife transferred the Gum Flat property to him as a gift. Husband also relies on *Rem Enterprises, Ltd. v. Frye*, 937 S.W.2d 920 (Tenn. Ct. App. 1996), for the proposition that the quitclaim deed is effective between the parties notwithstanding the defective acknowledgment.

Husband refers us to nothing in the record to demonstrate that he raised the question of whether Wife intended to convey the Gum Flat property to him as a gift in the trial court. The trial court made no finding with respect to whether Wife intended to convey her interest in the Gum Flat Property as a gift, and we find nothing in the record with respect to a "gift" other than in the context of a gift *to* the marital estate as provided by the statutes and case law. Husband's arguments in the trial court were limited to the validity of the deed. The only evidence in the record pertaining to the issue of a gift is contained in the transcript of the proceedings in the trial court in December 2017. Upon cross-examination of Husband, counsel for Wife asked, "Did she [Wife] mention to you, in any form, that she wished to give you that half-interest that she had?" Husband replied, "No."

It is well-settled that issues not raised in the trial court may not be raised for the first time on appeal. *Blankenship v. Anesthesiology Consultants Exch., P.C.*, 446 S.W.3d 757, 760 (Tenn. Ct. App. 2014). To the extent that Husband's response to counsel may be construed as trying the issue by consent, his response definitively resolves the question. This argument is without merit.

We accordingly turn to whether the trial court erred by classifying a one-half interest in the Gum Flat property as marital property notwithstanding the quitclaim deed. When a court considers the effect of a quitclaim deed between spouses when dividing property in a divorce action, however, "the status of property depends not on the state of its record title, but on the conduct of the parties." *Arms v. Stanton*, 43 S.W.3d 510, 513 (Tenn. Ct. App. 2000) (quoting *Hand v. Hand*, C/A No. 01A01-9607-CH-00325, 1997 WL 187310, at *3 (Tenn. Ct. App. April 18, 1997)) (internal quotation marks omitted). "Trial courts are afforded great discretion when classifying and dividing property, and their decisions are entitled to great weight on appeal." *Lofton v. Lofton*, 345 S.W.3d 913, 923 (Tenn. Ct. App. 2008) (citation omitted).

The Tennessee Code provides, in pertinent part:

(1)(A) "Marital property" means all real and personal property, both tangible and intangible, acquired by either or both spouses during the course of the marriage up to the date of the final divorce hearing and owned by either or both spouses as of the date of filing of a complaint for divorce, except in the case of fraudulent conveyance in anticipation of filing, and including any property to which a right was acquired up to the date of the final divorce hearing, and valued as of a date as near as reasonably possible to the final divorce hearing date. In the case of a complaint for legal separation, the court may make a final disposition of the marital property either at the time of entering an order of legal separation or at the time of entering a final divorce decree, if any. If the marital property is divided as

part of the order of legal separation, any property acquired by a spouse thereafter is deemed separate property of that spouse. All marital property shall be valued as of a date as near as possible to the date of entry of the order finally dividing the marital property[.]

Tenn. Code Ann. § 36-4-121 (b)(1)(A).

The Code defines separate property, in relevant part, as:

(A) All real and personal property owned by a spouse before marriage, including, but not limited to, assets held in individual retirement accounts (IRAs) as that term is defined in the Internal Revenue Code of 1986 (26 U.S.C.), as amended;
(B) Property acquired in exchange for property acquired before the marriage;
(C) Income from and appreciation of property owned by a spouse before marriage except when characterized as marital property under subdivision (b)(1);
(D) Property acquired by a spouse at any time by gift, bequest, devise or descent[.]

Tenn. Code Ann. § 36-4-121(b)(2)(A-D).

In this case, the parties do not dispute that they acquired a one-half interest in the Gum Flat property during the course of their marriage. They also do not dispute that Husband largely controlled their tax, finance, and business affairs. Wife testified at trial that throughout the marriage, "since day one, he comes in with papers that I've signed." Wife testified that she did not read the quitclaim deed presented to her by Husband in October 2011, and that "all the land we bought, he's always handed me a paper to sign it. The income tax, I always signed those." When asked whether she could have read the document, Wife testified, "[w]ell, I did, at the beginning, but he's my husband. I mean, it's just something that after a while, you know, you just sign it. He asked me to, and I did."

Husband testified at trial that he told Wife that his father wanted her to sign the deed, that Wife signed the deed, and that Wife commented that it would not "be any good because it's not notarized." Wife, however, denied telling Husband that the deed would not be valid if not notarized. Husband further testified that he "brung it [the deed] home one night and I told her daddy wanted her to sign it." Husband testified that Wife "glanced" at the document but did not read it. When asked whether Wife signed "pretty well[] what [Husband] presented to her to sign[,]" Husband replied, "Yes, she did."

"'As a general rule, assets acquired by either spouse during the marriage are

- 7 -

presumed to be marital property.'" *Williams v. Williams*, No. W2018-00800-COA-R3-CV, 2019 WL 1375218, at *6 (Tenn. Ct. App. Mar. 26, 2019) (quoting *Bewick v. Bewick*, No. M2015-02009-COA-R3-CV, 2017 WL 568544, at *7 (Tenn. Ct. App. Feb. 13, 2017)). The spouse asserting that an asset acquired during the marriage is separate property bears the burden of proving that fact by a preponderance of the evidence. *Id.* Husband failed to do so in this case. Therefore, we affirm the trial court's classification of a one-half interest in the Gum Flat property as marital property. Accordingly, the trial court did not err in considering the value of the Gum Flat property, which the court awarded to Husband, when dividing the parties' marital property.

### 2. *Shares of Business Stock*

We turn next to Husband's issues pertaining to Frank Climer and Sons Paving Company, Inc. stock, Ruleman's Sand and Gravel, Inc. stock, and Frank Climer and Sons Asphalt Materials, Inc. stock and equipment (collectively, "the businesses"). Husband contends that the trial court erred in including the businesses when determining Husband's separate property. He contends that his father's will was probated only with respect to real property, and that the businesses accordingly remain in his father's estate. He further asserts in his brief that "to the extent that the [c]ourt considered the assets and stock of [the businesses] in its division of the marital estate . . . the court erred in doing so."

The trial court made the following finding in the August 2018 letter ruling incorporated by reference into the final decree of divorce:

> Frank Climer was Husband's father. His mother is Jean Climer. Frank and Jean divorced in approximately 1982. Frank later married Mary Lou Climer. In 2006, Frank Climer executed a document (Exhibit 5) which was partially typed or a form, and partially hand-written by possibly Jamie Smith who worked for Mr. Climer in his office. This document was probated as Frank Climer's Will by Husband on January 20, 2015 (Exhibit 6) to establish chain of title to real estate which Frank Climer owned at his death which occurred on April 28, 2013, and which real estate is "bequeathed in the Will of the deceased". (See Exhibit 7)

> The "Will" is unusual, but the Court has no evidence it was ever contested or challenged, and there has been no effort to administer Frank Climer's estate as far as testimony or evidence in the trial, other than this document and these proceedings in the Crockett County Probate Court. Husband claims title to the real estate listed in the Will shown to go to him per Frank Climer's wishes, to wit:

> 1. 7 acres in Mississippi;

2. House and land at 1181 Norris Crossing Road, Bells, Tennessee;
3. House and land at Highway 54, Alamo, Tennessee;
4. 115 acres on Gum Flat Road.

Also under the "Will" which by all accounts is Frank Climer's Will, Husband also inherited the following:

5. Frank Climer and Son's Paving Company, Inc., plus equipment, land, office, and shop;
6. Frank Climer and Son's Asphalt Materials, Inc. and equipment;
7. Ruleman Sand and Gravel, Inc. and property and equipment;
8. Climer and Son's Gravel Springs, Inc. and equipment;
9. Ruleman Sand and Gravel, Inc. plant number 4 at Baskin Road;
10. Insurance policy - John Hancock;
11. Frank Climer and Sons Paving, Inc. special account at Bank of Crockett;
12. Frank Climer account at Bank of Crockett.

Mary Lou Climer was devised 34 acres (house and property).

Although Husband asserts that the trial court erred by considering the businesses when it classified and divided the parties' property, he references nothing in the record that indicates that the trial court considered the value of the businesses when dividing the parties' marital estate. The Rule 7 statement of property and debts attached as an appendix to Husband's Brief recites no value for the businesses.[1] The record, moreover, contains two five-page spreadsheets illustrating the trial court's division of marital property. Neither the spreadsheet entered with the trial court's October 2018 order, nor the amended spreadsheet entered following resolution of the parties' motions to alter or amend, assign a value to the business. Accordingly, even assuming the trial court erred in including the businesses as Husband's separate property, any such error worked no

---

[1] Rule 7 of the Rules of the Court of Appeals provides, in relevant part:

(a) In any domestic relations appeal in which either party takes issue with the classification of property or debt or with the manner in which the trial court divided or allocated the marital property or debt, the brief of the party raising the issue shall contain, in the statement of facts or in an appendix, a table in a form substantially similar to the form attached hereto. This table shall list all property and debts considered by the trial court, including: (1) all separate property, (2) all marital property, and (3) all separate and marital debts.

(b) Each entry in the table must include a citation to the record where each party's evidence regarding the classification or valuation of the property or debt can be found and a citation to the record where the trial court's decision regarding the classification, valuation, division, or allocation of the property or debt can be found.

inequity.

### 3. *Real Property Awarded to Wife*

Wife asserts the trial court correctly classified the parties' property and divided the marital estate equitably. She contends, however, that the trial court abused its discretion by not granting her request to order Husband to pay her the value of the unimproved real property awarded to her or, alternatively, to share the expenses of the sale of the property. Wife does not point us to any motion in the record demonstrating that she made such a request, however, nor does she point us to any ruling made by the trial court on the matter. We find no such request in her motions to alter or amend. Wife cites no authority in support of her argument. Both the failure to appropriately reference the record and the failure to support an argument with citations to authority constitute a waiver of the issue. *Forbess v. Forbess*, 370 S.W.3d 347, 355 (Tenn. Ct. App. 2011) (citations omitted); *Bean v. Bean*, 40 S.W.3d 52, 55 (Tenn. Ct. App. 2000) (citations omitted). This issue is waived. We affirm the trial court's judgment with respect to the classification and division of property.

## B. AWARD OF ALIMONY

We begin our review of the trial court's award of alimony in this case by noting "that trial courts have broad discretion to determine whether spousal support is needed and, if so, the nature, amount, and duration of the award." *Gonsewski v. Gonsewski*, 350 S.W.3d 99, 105 (Tenn. 2011) (citations omitted). It is a factually-driven determination that requires the court to carefully balance many factors. *Id.* The appellate courts, therefore, "'are generally disinclined to second-guess a trial judge's spousal support decision.'" *Id.* (quoting *Kinard v. Kinard*, 986 S.W.2d 220, 234 (Tenn. Ct. App. 1998)). When reviewing a trial court's determination regarding an award of spousal support, the appellate court's role "'is to determine whether the trial court applied the correct legal standard and reached a decision that is not clearly unreasonable.'" *Id.* (quoting *Broadbent v. Broadbent,* 211 S.W.3d 216, 220 (Tenn. 2006)). Thus, we will not second guess the trial court's decision or substitute our judgment for the judgment of the trial court, but will review the trial court's decision for an abuse of discretion. *Id.* (citations omitted). "An abuse of discretion occurs when the trial court causes an injustice by applying an incorrect legal standard, reaches an illogical result, resolves the case on a clearly erroneous assessment of the evidence, or relies on reasoning that causes an injustice." *Id.* (citations omitted). This standard "'reflects an awareness that the decision being reviewed involved a choice among several acceptable alternatives,' and thus 'envisions a less rigorous review of the lower court's decision and a decreased likelihood that the decision will be reversed on appeal.'" *Id.* (quoting *Henderson v. SAIA, Inc.* 318 S.W.3d 328, 335 (Tenn. 2010)). We accordingly review the evidence in a light that is most favorable to the trial court's decision. *Id.* (citations omitted).

When fashioning an award of spousal support, courts must consider the following statutory factors:

(1) The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;

(2) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earnings capacity to a reasonable level;

(3) The duration of the marriage;

(4) The age and mental condition of each party;

(5) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;

(6) The extent to which it would be undesirable for a party to seek employment outside the home, because such party will be custodian of a minor child of the marriage;

(7) The separate assets of each party, both real and personal, tangible and intangible;

(8) The provisions made with regard to the marital property, as defined in § 36-4-121;

(9) The standard of living of the parties established during the marriage;

(10) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;

(11) The relative fault of the parties, in cases where the court, in its discretion, deems it appropriate to do so; and

(12) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

Tenn. Code Ann. § 36-5-121(i). The court must consider all relevant factors, and the two most important are the need of the disadvantaged spouse and the obligor spouse's ability to pay. *Gonsewski*, 350 S.W.3d at 110 (citations omitted).

Husband challenges the award of alimony *in futuro* in the amount of $1,500 per month to Wife, and contends that he is not able to pay alimony in that amount. Wife was 62 years of age when the trial court entered its judgment in 2018. The court found that she had no savings or separate funds, that she was not involved in the several businesses that Husband owned and/or operated, and that she did not know the amount of Husband's income. The trial court found that Husband was responsible for the failure of the parties' marriage and granted Wife a divorce on the grounds of adultery, noting that Husband had admitted to various instances of adultery with several women dating from 1997. The trial court noted Wife's testimony regarding physical abuse and found that Husband had pled guilty to abuse on at least one occasion. The trial court found the parties agreed that they had enjoyed a comfortable standard of living during the marriage. They stayed in hotels when they traveled to cattle shows, ate out on weekends, and were able to send their children to college.

Neither party's work history was disputed. The trial court found that Wife's work history included work at McDonald's and Service Merchandise prior to the parties' marriage, that she worked at Jackson Clinic for seven years, and that she stopped working outside the home when the parties' second child was born in 1989. At the time of trial, Wife was employed as a day care provider at a rate of $9.75 per hour. The trial court found that she "has reached the pinnacle of her earning capacity considering her age, education, and experience." The trial court found that her gross income at the time of trial was approximately $1,690 per month, that her net income was approximately $1,200 per month, and that her need was $3,000 per month.

The trial court found that Husband's income was "more difficult to determine." At the time of the divorce, Husband was 59 years old and had a high school education. The trial court found that Husband "operates the business inherited from his father and runs a cattle operation" and that Husband "controls his income and salary." The trial court also found that, in addition to real property, Husband owns "timber of an unknown value." The trial court noted that Husband's cattle operations "always show a significant loss" on the parties' tax returns. The trial court determined that Husband's minimum earning "capacity" is $60,000 per year based on income reported on his W-2 tax forms and income potential from three parcels of real property "regardless of what he draws from his businesses and earns from cattle sales."

Husband claims that the trial court erred by determining that he was the owner of Frank Climer and Sons Paving Company, Inc. and Ruleman's Sand and Gravel, Inc. for the purpose of assessing his income. We reiterate that, as noted above, the trial court

- 12 -

assigned no value to the businesses, equipment, or assets bequeathed to and controlled by Husband when determining the value of Husband's separate assets and the amount of spousal support Husband is able to pay. We find Husband's protestations regarding his interest in the businesses, moreover, to be disingenuous. Notwithstanding Husband's failure to formally have his father's will probated in its entirety, the exhibits contained in the record demonstrate that the officers of Ruleman's Sand and Gravel, Inc. and of Frank Climer & Sons Paving Company, Inc. recognized Husband as "the sole owner of the corporation(s)" and the "sole and only stockholder of all of the stock in said corporation(s)" at special called meetings on September 1, 2015. Husband does not dispute that he operates the business, and he testified at trial that his father left "everything to [him]." Husband also testified that he intended to have his father's will fully probated after the divorce. We also note that Husband testified that, in addition to taxable wages, the businesses paid for expenses including gas, telephone, cable, vehicle insurance and property taxes on several parcels of real property. The trial court nevertheless disregarded such "draws" when determining Husband's income.

With these observations in mind, we turn to whether the trial court erred in its finding that Husband's "minimum income capacity, considering all the facts in this case, is $60,000 per year[.]" Husband's W-2 statements for 2016 show wages from Frank Climer & Sons Paving Company, Inc. in the amount of $25,936 and wages from Ruleman's Sand & Gravel, Inc. in the amount of $20,800. Thus, Husband's total W-2 income in 2016 was $46,736. The trial court found that income appraisals of three parcels of Husband's real property show potential income in the amount of $29,684 per year based on the income approach real estate appraisals of the real property contained in the record. Husband does not dispute the appraisal amounts. Rather, he argues that the trial court erred in imputing income to him in the amount of $29,684 per year. We note, however, that the trial court did not impute income to Husband of $29,684. Husband's W-2 income was $46,736, and, after considering Husband's additional potential income from the real property, the trial court set Husband's earning capacity at only $60,000. This sum is only $13,264 higher than Husband's W-2 income.

Husband relies on *Goodman v. Goodman*, 8 S.W.3d 289 (Tenn. Ct. App. 1999), for the proposition that the trial court erred in including any income potential from the real property in its calculation of Husband's income absent a finding of underemployment. The *Goodman* court reduced an award of spousal support upon determining that the obligor spouse did not have the ability to pay. *Goodman v. Goodman*, 8 S.W.3d 289, 296 (Tenn. Ct. App 1999). As this Court noted when rejecting reliance on *Goodman* in a later case, however, "the trial court in *Goodman* relied in part on the husband's potential to work extra hours, which he had never done, and on his purported ability to borrow money from his wealthy parents." *Russell v. Russell*, No. M2012-02156-COA-R3-CV, 2013 WL 6228164, at *7 (Tenn. Ct. App. Nov. 27, 2013) (citing *Goodman*, 8 S.W.3d at 294-295). The potential income considered by the trial court in *Goodman* was income from a trust under which the husband's mother was the

beneficiary. The husband had no interest in the trust, and he would not acquire an interest unless bequeathed to him by his mother if she predeceased him. *Goodman*, 8 S.W.3d at 294. As in *Russell*, the trial court in this case assigned no income to Husband other than wages and income to be derived from Husband's own earnings and property interests. Husband's reliance on *Goodman* is misplaced.

We next turn to Husband's assertion that, if the trial court did not err by assigning income from real property to him, it erred by failing to impute appraised potential income from real property in the amount of $24,487 to Wife. Wife, on the other hand, argues that the trial court did not abuse its discretion when fashioning the alimony award in light of the disparity in the parties' earning capacities, the value of Husband's separate property, and the unconsidered value of the businesses and assets associated with them. She also emphasizes that, although the trial court found that she needed $1,800 per month in addition to her income to meet her basic needs, the trial court set alimony at only $1,500 per month. Wife further contends that her Affidavit of Income and Expenses did not include expenses that were paid for through Husband's businesses, including real estate taxes, insurance and medical expenses, car expenses, and telephone, and that her expenses were therefore underestimated. Wife does not dispute the income potential of the undeveloped real property awarded to her, but asserts that, unlike Husband, she has no experience or knowledge in farming or raising cattle that would enable her to benefit from the property. She further asserts that, assuming the property can be sold, it will be subject to real estate commissions and other sales expenses. We observe that Husband did not pursue this matter in the trial court in his motion to alter or amend, in his response to Wife's motion to alter or amend and for additional findings of fact, or in his response to Wife's motion to reopen the matter for additional proof.

Upon review of the totality of the record, we observe that Wife indicated that many expenses were unknown or "paid by husband" in her Affidavit of Expenses, and that the trial court found that Husband's businesses paid some of Wife's expenses. We further observe that the trial court found that Husband "essentially operate[s]" the businesses "as a personal asset[,]" and that Husband paid many personal expenses, including expenses related to his cattle operations, through the businesses. The trial court awarded Husband approximately 47% of the parties' marital property. Husband additionally retained separate property valued at more than $330,000. The trial court was unable to assess the value of the timber owned by Husband, found that Husband "controls his income and salary[,]" that his income and job were "safe[,]" that Husband's reasonable expenses were $30,000 per year, and that Husband has the ability to pay alimony. Upon review of the record, we observe that the tax records for the various businesses that Husband's late father bequeathed to him in the "Will" that he has not yet had probated, reported gross profits in excess of $2,000,000 in 2015. Assuming, *arguendo*, that the trial court erred by failing to impute potential income to Wife deriving from the real property, in light of the income disparity between the parties and the court's finding that Husband's earning capacity is $60,000 at *minimum*, a finding that has

- 14 -

substantial evidentiary support, any such error worked no injustice.

In light of our review of the totality of the record in this case, we find no abuse of discretion on the part of the trial court. We accordingly affirm the trial court's award of alimony in this case.

## C. REQUEST FOR ATTORNEY'S FEES ON APPEAL

We finally turn to Wife's request for an award of attorney's fees on appeal pursuant to Tennessee Code Annotated section 36-5-103(c).[2] We discussed this statute as it relates to alimony in *Malkin v. Malkin*, 475 S.W.3d 252, 263-64 (Tenn. Ct. App. 2015):

> Tennessee Code Annotated section 36-5-103(c) provides for awards of "reasonable attorney fees incurred in enforcing any decree for alimony," in the discretion of the court. Pursuant to this statute, a court may award attorney's fees to an alimony recipient who is forced to defend an action to reduce or terminate that alimony. *Henderson v. Henderson*, No. M2013-01879-COA-R3-CV, 2014 WL 4725155, at *12 (Tenn. Ct. App. Sept. 23, 2014) (citing *Evans v. Evans*, M2002-02947-COA-R3-CV, 2004 WL 1882586, at *13-14 (Tenn. Ct. App. Aug. 23, 2004)); *see also Owens v. Owens*, No. M2012-01186-COA-R3-CV, 2013 WL 3964793, at *6 (Tenn. Ct. App. July 30, 2013) *perm. app. denied* (Tenn. Nov. 13, 2013) ("Reasonable fees may be awarded pursuant to § 36-5-103(c) in actions to enforce a decree for alimony, which has been interpreted as including the situation where an alimony recipient is forced to defend an action to reduce or terminate that alimony."). The statute authorizes awards of attorney's fees incurred at trial as well as on appeal. *Henderson*, 2014 WL 4725155, at *12. The decision of whether to award attorney's fees incurred on appeal is a matter within the discretion of this Court. *Yattoni–Prestwood v. Prestwood*, 397 S.W.3d 583, 597 (Tenn. Ct. App. 2012) (citing *Archer v. Archer*, 907 S.W.2d 412, 419 (Tenn. Ct. App. 1995); *Seaton v. Seaton*, 516 S.W.2d 91, 93 (Tenn. 1974)).

Simply put, this statute "authorizes courts to award reasonable attorney's fees to the prevailing party in an action to enforce any decree for alimony, child support, or child custody." *Eberbach v. Eberbach*, 535 S.W.3d 467, 475 (Tenn. 2017).

"Appellate courts have discretionary authority to award a spouse 'reasonable attorney fees incurred in enforcing any decree for alimony' regardless of whether the fees

---

[2] The statute was amended effective July 1, 2018, but the amended version only applies "to actions commenced on or after that date." 2018 Pub.Acts, c. 905, § 1.

are incurred at the original divorce hearing or at any subsequent hearing." *Moon v. Moon*, No. E2015-01470-COA-R3-CV, 2016 WL 1605511, at *8 (Tenn. Ct. App. Apr. 21, 2016) (quoting Tenn. Code Ann. § 36-5-103(c)); *see, e.g.*, *Parker v. Parker*, No. E2018-00643-COA-R3-CV, 2019 WL 1531667, at *6 (Tenn. Ct. App. Apr. 9, 2019) (considering an appeal from a divorce trial and awarding the wife attorney's fees because she "should not be required to use her limited resources to pay for the defense of the trial court's award to her of . . . long-term spousal support"); *Henderson*, 2014 WL 4725155, at *12 (awarding the wife attorney's fees she incurred on appeal from a divorce proceeding when defending against the husband's attempt to reduce or terminate his alimony obligation).

In light of the issues involved in this litigation, the respective financial positions of the parties, and Ms. Climer's success on appeal, we exercise our discretion to grant her request for an award of her reasonable attorney's fees and expenses for appellate work defending the alimony award. However, Ms. Climer is not entitled to an award of the fees she incurred in defending the marital property issues. *See Henderson*, 2014 WL 4725155, at *12. Five of the ten issues raised on appeal pertained to the alimony award. As such, we award Ms. Climer one-half of the reasonable attorney's fees she incurred on appeal. *See id.* The trial court will set the fee award on remand.

## IV. CONCLUSION

In light of the forgoing, the judgment of the trial court is affirmed in its entirety. Wife is granted an award of reasonable attorney's fees on appeal. This cause is remanded to the trial court for enforcement of the judgment and a determination of Wife's reasonable attorney's fees. Costs on appeal are taxed to Stephen Franklin Climer, for which execution may issue if necessary.

_____
CARMA DENNIS MCGEE, JUDGE